J-A21003-19

2020 PA Super 89

| | | |
|---|---|---|
| CLL ACADEMY, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ACADEMY HOUSE COUNCIL, ROBERT | : | |
| VOGEL, BRUCE KLEINSTEIN, CAROLE | : | |
| GIAMPALMI, LINDA RINK, MICHAEL | : | No. 446 EDA 2019 |
| GOLDMAN, ROBERT WASHBURN, | : | |
| JOHN DOE MEMBERS OF ACADEMY | : | |
| HOUSE COUNCIL 1-10 AND | : | |
| PARKWAY CORPORATION | : | |
| | : | |
| | : | |
| APPEAL OF: ACADEMY HOUSE | : | |
| COUNCIL ON BEHALF OF THE UNIT | : | |
| OWNERS OF ACADEMY HOUSE | : | |
| CONDOMINIUM ("AH COUNCIL)" | : | |
| AND INDIVIDUAL MEMBERS OF AH | : | |
| COUNCIL, ROBERT VOGEL, BRUCE | : | |
| KLEINSTEIN, CAROLE GIAMPALMI, | : | |
| LINDA RINK, MICHAEL GOLDMAN | : | |
| AND ROBERT WASHBURN | : | |

Appeal from the Order Dated January 14, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  October Term, 2017, No. 03791

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                           **FILED APRIL 06, 2020**

Academy House Council appeals on behalf of the Unit Owners of Academy House Condominium and the individually named council members (collectively "AHC"), and challenges the trial court's order compelling it to divulge allegedly attorney-client privileged communications and attorney work product to opposing counsel "for attorneys' eyes only," to enable CLL

Academy, Inc.("CLL") to respond to claims of privilege.[1]   After thorough review, we vacate that portion of the order compelling disclosure to opposing counsel for their eyes only, and remand for further proceedings consistent herewith.

Before us is an action for tortious interference with contractual relations and prospective contractual relations, commercial disparagement, and civil conspiracy instituted by CLL against AHC.  CLL pled the following.  CLL owns the parking garage underneath the Academy House building in which the Academy House Condominium is located.  **See** Amended Complaint, 12/18/17, at ¶1.  When CLL refused to pay AHC hundreds of thousands of dollars in construction costs for structural repairs it did not owe, AHC embarked on a plot with Parkway Corporation to alienate CLL's parking customers.  **Id**.  CLL alleges that AHC made false statements to residents regarding CLL's refusal to pay, and solicited Parkway Corporation, the owner of a nearby parking garage, to offer below-market rates targeting CLL's customers in order to entice them away from CLL.  **Id**. at ¶2.  In addition, CLL claims that AHC marketed the reduced rate to its residents in order to induce them to leave CLL and to punish CLL for its refusal to pay.  **Id**.  Consequently,

---

[1] This non-final discovery order is ripe for appellate review as a collateral order because it compels AHC to disclose allegedly privileged communications to CLL, albeit for attorney's eyes only.  **See Yocabet v. UPMC Presbyterian**, 119 A.3d 1012, 1016 n.1 (Pa.Super. 2015) (applying collateral order doctrine under Pa.R.A.P. 313 to discovery orders compelling production of materials purportedly subject to a privilege); **see also Ben v. Schwartz**, 729 A.2d 547 (Pa. 1999) (recognizing immediate appealability of orders requiring the divulgence of materials claimed to be privileged).

CLL lost a substantial number of monthly customers and the attendant revenue. *Id*. at ¶5.

The collection dispute between AHC and CLL over the latter's obligation to pay for construction costs is the subject of a separate contract/declaratory judgment action pending between the parties. The docket indicates that CLL asked the court to consolidate these actions, but consolidation was denied by order of June 5, 2008.

Numerous documents have been exchanged during the course of discovery herein. For purposes of this appeal, the following facts are pertinent. CLL moved to compel production of documents Bates-stamped AHCD 1459-AHCD 1574. It alleged that the communications were not protected work product because they were not communications of "representatives of a party other than the party's attorney" reflecting mental impressions and opinions as to the value or merit of a claim or defense. Rather, CLL contended that they were communications reflecting the mental impression of the individual parties. *See* Plaintiff's Motion to Compel AH Defendants to Produce Documents Bate-Stamped AHCD 1459-AHCD 1574 Unredacted Except for Specific Reference to Legal Advice or Mental Impressions of the Attorneys of the Obermayer Firm, at 2. Additionally, CLL maintained that most of the communications related to a different lawsuit between the parties, and furthermore, they were created months before the instant action was filed, and hence, not protected. *Id*. Finally, CLL alleged

that since the state of mind of the AHC defendants was at issue, the documents were evidentiary and not covered by Rule 4003.3.

CLL requested that the Discovery Master order AHC to produce these documents unredacted for *in camera* review, and following such review, to issue recommendations to the court to order production "without redactions except for specific reference to legal advice or mental impressions of the attorneys at the Obermayer firm." ***Id***.

AHC supplied a privilege log with regard to the fifteen documents at issue, its proposed redactions, and the Master conducted *in camera* review. The Master recommended, in some instances, different redactions than those proposed by AHC. The trial court adopted the recommendations of the Master, and ordered AHC to produce the documents as redacted by the Master to CLL. Order, 12/20/18.

AHC sought reconsideration on January 8, 2019, and requested that a hearing be scheduled and that counsel be permitted to submit *ex parte* argument "to provide additional context behind the internal communications at issue and the nature of the correspondence and strategy being discussed therein." ***See*** Motion for Reconsideration, 1/8/19, at ¶6. AHC attached correspondence in which the Master had conveyed his willingness to meet *ex parte* to consider AHC's additional arguments in favor of AHC's proposed redactions. ***See id***. at Exhibit I. By letter dated December 14, 2018, CLL's counsel advised the Master that he objected to "an *ex parte* private meeting

between the Discovery Master and opposing counsel," as AHC would have "an opportunity to make arguments for reconsideration to which we cannot respond to protect our client's interests." *See* Motion for Reconsideration, 1/8/19, at Exhibit G. CLL's counsel suggested that argument be held on an "attorney's eyes only" basis. The Master ultimately did not meet privately with AHC in order to avoid "creat[ing] an unnecessary procedural issue." *Id*. at ¶5; *see also id*. at Exhibit I. Instead, the Master supplied the trial court with a copy of the documents as redacted by AHC, and a separate copy of the same documents highlighting his proposed redactions. *See id*. at Exhibit J. CLL maintained throughout that it needed to view the unredacted documents, and suggested that they be produced for "attorneys' eyes only" for that purpose.

The trial court granted reconsideration in part, and agreed to entertain argument. It then ordered AHC to produce the fifteen documents without redactions that were originally refused protection by the Master "on an attorney's eyes only" basis. Order, 1/14/18, at 3. AHC timely appealed to this Court.

AHC presents four issues for our review:

1. Did the trial court err in its December 20 and January 14 Orders when it ordered counsel for AH[C] Defendants to produce certain un-redacted internal communications among AH[C] set forth in AHC D001460-1471, 1479-1480 and 1573 without ruling on the relevancy of each document or explaining why the privilege asserted in each communication at issue was inapplicable?

2. Did the trial court err in its December 20 and January 14 Orders when it ordered counsel for AH[C] to produce certain un-redacted internal communications among AH[C] set forth in AHCD001460-1471, 1479-1480 and 1573, where the disclosure of such communications would reveal: (a) advice and strategy provided to AH[C] by it legal counsel in response to legal questions and inquiry raised by AH[C] regarding a separate, active legal dispute between CLL and AH[C]: (b) legal advice sought by AH[C] regarding a separate, active legal dispute between CLL and AH[C]; and/or (c) the substance of communications made by AH[C] to its counsel regarding a separate, active legal dispute between CLL and AH[C]?

3. Did the trial court err in its December 20 and January 14 Orders when it ordered counsel for AH[C] Defendants to produce certain un-redacted internal communications among AH[C] set forth in AHCD001460-1471, 1479-1480 and 1573, where the disclosure of such communications would reveal AH[C]'s mental impressions, conclusions, and /or opinions regarding the value and merit of claims and defenses and litigation strategy and tactics of a separate legal dispute between CLL and AH[C]?

4. Are the December 20 and January 14 Orders contradictory to the trial court's earlier order dated August 8, 2019, which permitted AH[C] Defendants to redact "specific reference[s] to legal advice or mental impressions of the attorneys at the Obermayer firm" and any mental impressions, conclusions, or opinions, regarding the value or merit of a claim or a defense or litigation strategy or tactics expressed by a party's non-attorney representative?"

Appellant's brief at 5-6.

The application of the attorney-client privilege and the work product doctrine are questions of law over which our standard of review is *de novo* and our scope of review is plenary. ***Bousamra v. Excela Health***, 210 A.3d 967, 973 (Pa. 2019). In evaluating claims of privilege, we are mindful of our High Court's recent observations:

> We have often recognized the conflict inherent in the attorney-client privilege. On the one hand, our precedent disfavors evidentiary privileges which are in tension with the truth-determining process of the justice system, as they result in the exclusion of evidence. Nevertheless, we have emphasized the need for protection of various types of communications though the establishment of privileges. Of these privileges, the attorney-client privilege is often considered 'the most revered.' The attorney-client privilege as codified by the General Assembly, 42 Pa.C.S. § 5928, and applied by our courts is intended to foster open discussion between counsel and client. Only with full information from the client can an attorney provide relevant and sound legal advice.

*Pittsburgh History & Landmarks Found. v. Ziegler*, 200 A.3d 58, 80 (Pa. 2019) (internal citations and question marks omitted).

Notably, the attorney-client privilege does not end when representation ceases. *See Commonwealth v. Hutchinson*, 434 A.2d 740, 744 (Pa.Super. 1981) (privilege which attaches to statements made to lawyer or his agents survives the termination of the attorney-client relationship). Moreover, the privilege survives the death of the client. *See Swidler & Berlin v. United States*, 524 U.S. 399, 410 (1998). Where, as here, there are two ongoing lawsuits between CLL and AHC, attorney-client privileged communications made in relation to one lawsuit do not lose their vitality in the other.

The work-product doctrine is codified in Pennsylvania Rule of Civil Procedure 4003.3. The privilege belongs to the attorney. *BouSamra*, *supra* at 975. We start from the premise that anything denoted in Rule 4003.1 is discoverable, "even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his

or her attorney, consultant, surety, indemnitor, insurer or agent." Pa.R.C.P. 4003.3. However, with respect to the representative of a party, other than the party's attorney, "discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics." *Id*. The explanatory comments to the Rule state that its essential purpose is to keep the files of counsel free from examination by the opponent. It provides "a privileged area within which [an attorney] can analyze and prepare [a] client's case . . . by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity*, 32 A.3d 800, 812 (Pa.Super. 2011), *aff'd* 91 A.3d 680 (Pa. 2014) (quoting *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1062 (Pa.Super. 2008)).[2]

Preliminarily, we address AHC's complaint that the trial court erred in ordering it to produce the fifteen documents subject to claims of privilege without redaction for the "attorneys' eyes only" of opposing counsel. AHC contends that the "ruling is contradictory to the underlying policy behind the

---

[2] CLL argues, *inter alia*, that AHC waived work product protection by communicating the information to third parties. The latter argument is a misstatement of the law of waiver of work-product privilege. *See Bousamra v. Excela Health*, 210 A.3d 967 (Pa. 2019) (holding that disclosure to third parties alone does not constitute waiver of work-product protection, but only disclosures that can reasonably be expected to reach one's adversary).

privileges, which is to prevent disclosure to the other side." Appellant's brief at 29. We agree.

The privilege log is the primary source for determining whether attorney-client privilege or work-product privileges apply.[3] Where the log alone does not permit meaningful analysis of the underlying claim or the scope of the asserted privilege, *in camera* review is available. **See** Pa.R.C.P. 4003.3. As we acknowledged in **Berg v. Nationwide Mutual Ins. Co.**, 44 A.3d 1164, 1179 (Pa.Super. 2012), "*[i]n camera* review is a valuable tool for determining the validity of privilege claims, and in many instances, it is difficult to make an informed decision regarding privilege without such an inspection."

*In camera* review was conducted herein, and the Discovery Master and the trial court ruled on AHC's proposed redactions to the fifteen documents at issue. AHC moved for reconsideration. CLL sought "attorneys' eyes only" disclosure of the unredacted documents, arguing that they could not determine whether any exceptions applied without seeing the documents themselves. CLL cited no authority suggesting that it was entitled to see unredacted documents subject to claims of privilege that were already the subject of *in camera* review, and we know of none. Had the documents been

---

[3] A privilege log usually takes the form of a chart describing documents or other communications claimed to be privileged. The log usually includes such information as the date and type of the communication, its author, the recipients, a general description of the subject matter, and the applicable privilege.

disclosed to CLL's counsel as ordered, the confidentiality of the communications would have effectively been destroyed.

We reject the use of the "attorneys' eyes only" procedure for disputes over privilege. Furthermore, we are unaware of any instances where it has been used during *in camera* review to determine the proper scope of redactions in privileged communications. The "attorneys' eyes only" procedure is not novel. It has been used in conjunction with a stipulated protective order in situations where confidential business information and trade secrets were being disclosed. *See e.g.*, *Glenn O. Hawbaker v. Quality Aggregates*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 20106 (Alleg. Co. No. G.D. 13-016072 Nov. 13, 2015) (stipulated protective order designating sensitive documents such as unredacted asset purchase agreement, bank escrow accounts, trade secrets or confidential and proprietary pricing information as "Attorneys' Eyes Only Documents"); *Aiken v. Living Independence for the Elderly - Pittsburgh*, 2016 Pa. Dist. & Cnty. Dec. LEXIS 16805, *3-4 (Alleg. Co. No. GD 14-015284 Aug. 28, 2016) (providing for designation of documents or portions thereof as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" where good faith belief that the materials contain extremely sensitive trade secret, confidential information or proprietary information, and disclosure could result in serious and immediate competitive injury to the producing party). The authority for such agreements stems from Pa.R.C.P. 4012(9), which governs protective orders and provides for the

disclosure of trade secrets or other confidential commercial information in a specifically designated way. *See Price v. Buczek Enters. LLC*, 2013 Pa. Dist. & Cnty. Dec. LEXIS 13812 (Alleg. Co. No. GD 13-000269 Apr. 12, 2013); *see also Solutions4networks v. Dqe Communs.*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 15777 (Alleg. Co. No. GD 14-014962 March 6, (designating information as "CONFIDENTIAL-ATTORNEYS EYES ONLY" under the auspices of Pa.R.C.P. 4012(a)(9)).

We find the "attorneys' eyes only" procedure to be wholly inconsistent with the *in camera* review sanctioned by our rules of civil procedure for evaluating claims of privilege. Moreover, the disclosure of confidential commercial information to attorneys who are not in a position to use it to achieve a competitive edge is quite different from the disclosure of an attorney's mental impressions and strategies to opposing counsel in ongoing litigation.

We find that the trial court erred in ordering "attorneys' eyes only" disclosure of unredacted documents subject to claims of attorney-client and work product privilege for purposes of reconsidering the redactions ordered *in camera*. Therefore, we vacate that portion of the January 14, 2019 order compelling "attorneys' eyes only" disclosure.

AHC invites us to review the documents and the specific redactions proposed. We decline to do so for several reasons. First, reconsideration of the redactions proposed by the Master and adopted by the trial court is

pending. Until the trial court has finally ruled regarding the redactions and ordered disclosure of communications claimed to be privileged, this matter is not ripe for appellate review. Secondly, we do not have the benefit of the trial court's reasoning in ruling on the redactions. *See Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1223 (Pa.Super. 2003) (remanding for the trial court to explain its rulings with regard to relevance and privilege). Although this Court will conduct *in camera* review, we do so in our appellate capacity. We rely on the trial court to develop an adequate factual record and provide the legal rationale for its rulings. Finally, the certified record is inadequate to undertake such review as the unredacted documents, as well as the redactions proposed by AHC and those approved by the trial court, are not included therein.[4]

For these reasons, we remand to permit the trial court to reconsider its order regarding redactions in the fifteen documents at issue, without divulging allegedly privileged communications contained therein, and to enter an appropriate order. Should AHC wish to provide additional facts to add context to its claims of privilege, it is within the trial court's discretion to permit such supplementation *ex parte*. CLL has no right to participate in *in camera* review.

_____

[4] We remind the parties that they are responsible for ensuring that this Court has the materials necessary to review the issues on appeal, with the ultimate responsibility resting upon the party raising an issue that requires or access to those materials. *See* Note to Pa.R.A.P. 1921. Documents subject to claims of privilege may be placed under seal in the trial court, made part of the certified record, and transmitted to this Court. *See* Pa.R.A.P. 1931(c).

Order vacated in part. Matter remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/6/2020*