J-S31003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER PHIFER AND THE COMPELLO GROUP | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : : : | |
| v. | : : : : : | |
| THE ENDOSCOPY CENTER, LLC (D/B/A COLONOSCOPY CENTER D/B/A COLONOSCOPY CENTER, LANSDALE, D/B/A COLONSCOPY CENTER, SELLERSVILLE, D/B/A ENDOSCOPY CENTER), GI HEALTH PROFESSIONALS PC (D/B/A CENTER FOR GI HEALTH), RONALD P. MARKOS IN HIS INDIVIDUAL AND OFFICAL CAPACITY, AND KATHLEEN LUKASZEWSKI SCHEETZ IN HER INDIVIDUAL AND OFFICIAL CAPACITY | : : : : : : : : : : : : : : : : | No. 1176 EDA 2022 |

Appellants

Appeal from the Order Entered April 13, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2019-07353

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 13, 2022**

The Endoscopy Center, LLC, GI Health Professionals PC, and Ronald P. Markos and Kathleen Lukaszewski Scheetz in their individual and official capacities (collectively "TEC Parties") appeal from the April 13, 2022 order, which granted in part the motion, filed by Christopher Phifer, The Compello

_____

[*] Former Justice specially assigned to the Superior Court.

Group,[1] and Mr. Phifer's wife, Carolyn Phifer (collectively, "Phifer Parties"), to compel production of certain documents that the TEC Parties claim are protected by attorney-client privilege and the work product doctrine.[2] We reverse the order to the extent it required the production of the documents Bates-Stamped 1691 through 1701 and remand for further proceedings.

By way of background, Dr. Markos and Dr. Lukaszewski Scheetz are licensed physicians and shareholders of the Endoscopy Center, LLC, and GI Health Professionals PC. Dr. Lukaszewski Scheetz's husband, Lawrence Scheetz, is an attorney who represents the TEC Parties. Mr. Phifer was formerly employed by the TEC Parties. According to Mr. Phifer, he was employed as CEO/COO. The TEC Parties contest that Mr. Phifer held the title of CEO.

This appeal stems from the consolidation of two cases, both of which relate to Mr. Phifer's employment with the TEC Parties and his termination therefrom on December 26, 2018.[3] The Phifer Parties commenced an action in Montgomery County against the TEC Parties for breach of oral and written

---

[1] The Compello Group is a billing company; Mr. Phifer is the sole owner.

[2] Pursuant to Pa.R.A.P. 313(b), this Court has jurisdiction over appeals from orders compelling production of documents that are claimed to be privileged. *See Ford-Bey v. Pro. Anesthesia Servs. of N. Am., LLC*, 229 A.3d 984, 988 n.4 (Pa.Super. 2020).

[3] The cases were consolidated at, and all filings were ordered to be made at, the above-captioned docket number. *See* Order, 9/23/21, at 1.

contract, unjust enrichment, fraudulent misrepresentation, fraudulent inducement, breach of duty of good faith and fair dealing, violation of Pennsylvania Wage Payment and Collection Law, retaliation under Pennsylvania Whistleblower Law, and conversion. The Phifer Parties allege that they were "denied earned rights to equity shares in an outpatient surgery center as well as other compensation related to over a decade of work for the" TEC Parties. Motion to Compel, 11/10/21, at 4.

The TEC Parties, on the other hand, commenced an action in Bucks County against the Phifer Parties for conversion, fraud, and constructive trust. This action was subsequently transferred to Montgomery County. The TEC Parties allege that Mr. Phifer "converted in excess of $1 Million in funds from them . . . through deception, false records, abuse of his position and by funneling funds through" the Compello Group and Mrs. Phifer. Complaint, 5/8/19, at ¶¶ 33-34.

The instant appeal specifically concerns production during discovery of Bates-Stamped documents 1691 through 1701. The TEC Parties described these documents in a privilege log as attachments to a December 14, 2018, email from Dr. Markos to Dr. Lukaszewski Scheetz and Mr. Scheetz "for the purpose of obtaining information to provide legal advice to TEC-CGI regarding the termination of Christopher Phifer[.]" Defendant's Privilege Log (Supplement) Relating to Lawrence Scheetz, Esq., 10/14/21, at unnumbered 6. The attachments consist of six billing statements for services rendered by

the law firm Antheil Maslow & MacMinn, LLP ("AM&M") to the TEC Parties. They were originally addressed to Mr. Phifer in his capacity as an employee of the TEC Parties and the dates of the individual invoices range from August 23, 2017, to July 26, 2018. The TEC Parties claimed the email and attachments were protected by attorney-client privilege and the work product doctrine.

On November 5, 2021, the Phifer Parties filed a motion to compel production of, *inter alia*, several emails and attachments, including the billing statements. According to the Phifer Parties, the TEC Parties could not claim attorney-client privilege for the December 14, 2018 email and attached billing statements because Mr. Scheetz was not retained as an attorney until December 23, 2018, and therefore they averred that when the email was sent, no attorney-client relationship existed between Mr. Scheetz and the TEC Parties. **See** Motion to Compel, 11/5/21, at 4-8. The TEC Parties maintained that the body of emails sent between December 5 and December 29, 2018, were protected by attorney-client privilege because they occurred within "a period when Mr. Scheetz was representing the TEC Parties." Memorandum of Law in Support of its Response in Opposition, 12/6/21, at 9-10. The TEC Parties did not contest Mr. Scheetz's retention date.[4]

_____

[4] The TEC Parties actually stated that they did not retain Mr. Scheetz until December 23, **2019**, which contradicts the assertion of the Phifer Parties that he was retained on December 23, 2018. **See** Memorandum of Law in Support of its Response in Opposition, 12/6/21, at 4. However, based on the record before us, we treat this as a misstatement and not an assertion by the TEC Parties that Mr. Scheetz was retained over a year after the email was sent.

On February 22, 2022, the trial court ordered the TEC Parties to produce the requested documents for *in camera* review. Following review, the court issued the instant order granting in part and denying in part the Phifer Parties' motion to compel production of documents. Of relevance to this appeal, the court granted the motion to compel as to the billing statements. The TEC Parties filed a motion for reconsideration, identifying the billing statements "as legal bills" that contained "attorney-client privileged communications and attorney work product." Motion for Partial Reconsideration, 4/20/22, at ¶¶ 6-7. While the TEC Parties did not dispute that the billing statements had been originally sent to Mr. Phifer, they argued that the protections were not waived because the billing statements were sent to Mr. Phifer in his capacity as an employee of the TEC Parties, not to a third party. *Id*. at ¶¶ 8-11. Accordingly, the TEC Parties asked the court to redact the description of services in the billing statements. *Id*. at ¶ 16. The trial court denied the motion.

This timely appeal followed. Both the TEC Parties and the trial court complied with Pa.R.A.P. 1925. On appeal, the TEC Parties raise the following issues for our consideration:

1. Whether the lower court erred in determining that the description of services in the billing records did not include attorney-client and work product privileged communications, where the descriptions refer to specific areas of concern and specific strategies taken in responses to those concerns.

2. Whether the lower court erred in determining that issuing the billing records to Christopher Phifer, in his capacity as an employee of the TEC Parties, resulted in waiver of the attorney-

client and/or work product privileges, where no current representative of the TEC Parties has authorized such a waiver.

3. Whether this Court should reverse the lower court's orders and permit the production of the billing records with the descriptions of services redacted.

The TEC Parties' brief at 4 (capitalization altered).

Essentially, the TEC Parties are arguing that the trial court erred in finding that the billing statements were not protected and in denying their request for redaction of the protected descriptions therein. "The application of the attorney-client privilege and the work product doctrine are questions of law over which our standard of review is *de novo* and our scope of review is plenary." *CLL Acad., Inc. v. Acad. House Council*, 231 A.3d 884, 888 (Pa.Super. 2020) (citation omitted). We first address the application of attorney-client privilege, keeping the following in mind:

> The attorney-client privilege is codified at 42 Pa.C.S. § 5928. It provides that, unless a client waives the privilege, an attorney is not competent to testify in a civil case about his client's confidential communications to him, and the client cannot be compelled to disclose those communications. The attorney-client privilege allows counsel to provide legal advice based upon the most complete information from the client. . . . [T]he privilege protects communications from both lawyers to their clients and clients to their lawyers.
>
> To invoke application of the attorney-client privilege, four elements must be established:
>
> 1) The asserted holder of the privilege is or sought to become a client.
>
> 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

- 6 -

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

***Ford-Bey v. Pro. Anesthesia Servs. of N. Am., LLC***, 229 A.3d 984, 990–91 (Pa.Super. 2020) (cleaned up).  The party asserting the privilege

> bears the initial burden of producing sufficient facts to show that he has properly invoked the privilege for the communications that he has declined to disclose.  This often entails an affidavit, statement, or testimony clarifying the circumstances under which the communication was made.  The trial court must determine whether the facts support the asserted privilege.  If the trial court finds that the party invoking privilege has proffered proof to satisfy the test, the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies.  Absent a sufficient showing of facts to support the privilege, the burden does not shift and the communications are not protected.

***Id***. at 991 (cleaned up).  "Where. . . the client is a corporation, the attorney-client privilege extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf."  ***BouSamra v. Excela Health***, 210 A.3d 967, 983 (Pa. 2019) (cleaned up).

It is well-settled that "[a] privilege log provides an acceptable format to identify documents, the applicable privilege, and the basis upon which privilege is claimed."  ***Carlino E. Brandywine, L.P. v. Brandywine Vill. Assocs.***, 260 A.3d 179, 197 (Pa.Super. 2021) (footnote omitted).

> [T]he determination of the applicability of the attorney-client privilege does not turn on the category of the information, such as a client's identity or address, or the category of a document,

such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege[.]

**Levy v. Senate of Pennsylvania**, 65 A.3d 361, 373 (Pa. 2013) (cleaned up).

Presently at issue are the billing statements that were attached to a December 14, 2018 email to Mr. Scheetz. As the billing statements predate the December 14, 2018 email, we must determine whether the TEC Parties established privilege specifically as to the billing statements. As noted, the billing statements were initially sent by AM&M in 2017 and 2018 to Mr. Phifer as an employee of the TEC Parties. The Phifer Parties argue that the billing statements are not protected because they only included general descriptions of legal services. **See** The Phifer Parties' brief at 12-13. We disagree. Since the billing statements, sent from the attorney, AM&M, to the client, the TEC Parties, included "descriptions of legal services that address the client's motive for seeking counsel," they "are undeniably protected under the attorney client privilege." **Levy**, **supra**.

Having established that the billing statements were privileged communications when AM&M sent them to the TEC Parties, the burden shifted to the Phifer Parties to show that the privilege had been waived. Instantly, the Phifer Parties argue that because the billing statements had been sent

initially to Mr. Phifer, "[a]llowing Mr. Phifer to receive a copy of documents that he saw when he worked for the TEC Parties [would have] no chilling effect on the free exchange of information between lawyer and client" and therefore non-disclosure would not serve the purpose of the attorney-client privilege. *See* The Phifer Parties' brief at 14-15. The TEC Parties, on the other hand, contend that such a conclusion "would mark an extraordinary exception to the well-settled principle that communications with employees in their capacity as such do not constitute waiver of a privilege." The TEC Parties' brief at 13 (citations omitted).

The trial court was persuaded by the Phifer Parties' argument. In compelling disclosure of the billing statements, the court found the TEC Parties had "waived their right to assert a privilege" because the "description of services on the attorney invoices . . . were sent to [Mr. Phifer] at a time when he was employed by [the TEC Parties.]" Trial Court Opinion, 6/1/22, at 5-6.

We are troubled by the court's conclusion that the attorney-client privilege as to the billing statements was waived because Mr. Phifer saw the contents of the billing statements while he was an employee. At the time AM&M sent the billing statements to Mr. Phifer, he was an agent of the client, the TEC Parties. Accordingly, sending the billing statements to Mr. Phifer did not waive the attorney-client privilege. Mr. Phifer's subsequent termination did not retroactively render him a third party, thereby waiving all privileges for communications that had been sent by AM&M to Mr. Phifer as an agent of the TEC Parties. Such a result would be absurd. Therefore, the fact that

Mr. Phifer saw the billing statements while he was an agent of the TEC Parties does not constitute waiver and we do not agree with the Phifer Parties' policy argument.

Alternatively, the Phifer Parties argue that the TEC Parties waived any attorney-client privilege as to the billing statements when they sent them to Mr. Scheetz. While the Phifer Parties focus on the technical date of Mr. Scheetz's retention to argue that the email and attachments could not constitute an attorney-client privileged communication, it is evident from the record that even if he had not been retained yet, the TEC Parties were seeking to become clients. In their privilege log, the TEC Parties explained that they sent the email to Mr. Scheetz, "for the purpose of obtaining information to provide legal advice to TEC-CGI regarding the termination of Christopher Phifer[.]" Defendant's Privilege Log (Supplement) Relating to Lawrence Scheetz, Esq., 10/14/21, at unnumbered 6. Such communications fall within the scope of attorney-client privilege. **See Ford-Bey**, **supra**. Since the December 14, 2018 email was itself an attorney-client privileged communication between the TEC Parties and an attorney, disclosing the billing statements as part of that communication did not waive the attorney-client privilege status of the billing statements.

In sum, the certified record establishes that the documents Bates-Stamped 1691 through 1701 were privileged attorney-client communications, and the Phifer Parties failed to establish that the privilege had been waived.

Accordingly, we reverse the portion of the trial court's April 13, 2022 order that compelled production of the billing statements without redaction.[5]

Order reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

P.J.E. Stevens joins this Memorandum.

Judge Nichols concurs in the result.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 10/13/2022*

---

[5] Given our disposition, we need not address the TEC Parties' claim regarding the work product doctrine.