J-A05024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID O. BRAND | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEIGH A. BRAND, AND SANDRA G. | : | |
| BRAND, F/K/A SANDRA G. SPEAR | : | |
| | : | No. 1317 WDA 2023 |
| | : | |
| APPEAL OF: ROBERT N. BRAND | : | |

Appeal from the Order Entered October 6, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD. 23-2097

BEFORE:   OLSON, J., KING, J., and FORD ELLIOTT, P.J.E.<sup>*</sup>

CONCURRING AND DISSENTING MEMORANDUM BY OLSON, J.:

**FILED: AUGUST 26, 2025**

On February 14, 2023, Plaintiff, David O. Brand ("Plaintiff"), filed a complaint against his brother, Leigh A. Brand ("Defendant Leigh"), and his step-mother, Sandra G. Brand ("Defendant Sandra")[1] (hereinafter, collectively, "the Defendants").  According to the complaint, the Defendants conspired to "isolate Robert N. Brand [(hereinafter "Appellant"),[2] Plaintiff and Defendant Leigh's] father, from [Plaintiff] and his other trusted caregivers and

_____

<sup>*</sup> Retired Senior Judge assigned to the Superior Court.

[1] Sandra died during the course of this litigation.  Following her death, her estate was substituted as a defendant in this case.

[2] Appellant is not a party to the underlying litigation.

friends." Plaintiff's Complaint, 2/14/23, at ¶ 6. Plaintiff claimed that the object of the Defendants' conspiracy was "to gain control over the assets of [Appellant,] after [Appellant] suffered from two strokes in September 2021, resulting in declined mental capacity." *Id.*

According to the complaint, "[a]s part of their ongoing scheme to prevent [Plaintiff] from seeing [Appellant]," the Defendants defamed Plaintiff. *Id.* at ¶ 79. Specifically, Plaintiff claimed that: the Defendants "falsely accused [Plaintiff] of having a Protection from Abuse Order against him prohibiting him from contact with [Appellant]" and Defendant Leigh "falsely accused [Plaintiff] of committing the crime of trespassing on the Sun Valley Property."[3] *See id.* at ¶¶ 79 and 86. The complaint also included counts for

---

[3] According to the complaint:

> On July 16, 2018, [Appellant], trustee of The Carol Ann Brand Family Trust U/T/A February 22, 2003 and [Plaintiff] entered into an Option to Purchase Real Property Agreement (the "Option Agreement") relating to certain real property [in Idaho, known as the "Sun Valley Property."] [Plaintiff] and his family often spent time at the Sun Valley Property.
>
> The Option Agreement granted to [Plaintiff] for the sum of [$2,500.00], an exclusive option to purchase the Sun Valley Property following the death of [Appellant]. . . . [Further, the Option Agreement provided Plaintiff a license to enter the Sun Valley Property.]
>
> On July 20, 2018, [Plaintiff] paid the [$2,500.00] in consideration pursuant to the Option Agreement to the Carol Ann Brand Family Trust.

*(Footnote Continued Next Page)*

intentional infliction of emotional distress, conspiracy to commit defamation *per se*, and civil conspiracy. ***See id.*** at ¶¶ 92-114.

On May 4, 2023, Plaintiff caused a subpoena *duces tecum* to be issued upon Appellant, compelling his deposition as well as his production of certain documents, including "[a]ny and all documents related to [Appellant's] April 19, 2018 Durable Financial Power of Attorney" and "[a]ny and all Estate Planning Documents for [Appellant] from January 1, 2013 to the present." ***See*** Plaintiff's "Motion for Sanctions and Determination of [Appellant's] Claim of Attorney-Client Privilege to Withhold Production of Documents Under Subpoena" (hereinafter "Plaintiff's Motion"), 8/31/23, at Exhibit A. On June 2, 2023, the trial court ordered Appellant to appear for a deposition on June 30, 2023 and "to produce the documents requested on a rolling basis up to the date the deposition." Trial Court Order, 6/2/23, at 1.

From June 14, 2023 until June 29, 2023, Appellant's counsel produced over one thousand documents in response to Plaintiff's requests. Of note, Appellant's production included a series of e-mails between Appellant and Appellant's prior attorney, Jonathan Schmerling, Esq. ("Attorney Schmerling"). These e-mails carbon-copied another of Appellant's attorneys – and then-Power of Attorney – Bart Cowan, Esq. ("POA Cowan"). The e-mails were exchanged from November 1, 2021 to November 8, 2021, and concerned Appellant's Durable Financial Power of Attorney. Specifically, the e-mails

---

Plaintiff's Complaint, 2/14/23, at ¶¶ 24-28 (some paragraphing omitted).

consisted of the following: 1) Appellant instructed Attorney Schmerling that he wished to transfer his Financial Power of Attorney from POA Cowan to Plaintiff and 2) Attorney Schmerling advised Appellant as to how he could accomplish this transfer. The production of documents also included evidence that, on November 8, 2021, Appellant forwarded the above e-mails to Plaintiff and, on November 12, 2021, Appellant forwarded the e-mails to Defendant Leigh. **See** Plaintiff's Motion, 8/31/23, at Exhibit R.

During discovery, Appellant produced a privilege log, which identified a number of documents that were being withheld on a claim of privilege, including: 1) Bates Nos. 1417-1439 and 1483-1486, identified as "Estate planning" documents that were exchanged between Appellant, Attorney Schmerling, and POA Cowan; 2) Bates No. 1495, identified as an "Estate planning" document that was sent by Attorney Schmerling and received by Appellant and POA Cowan; and 3) Bates Nos. 1515-1516, identified as "Estate and [Power of Attorney] planning," documents which were sent by Appellant and received by Attorney Schmerling.[4] **See** Plaintiff's Motion, 8/31/23, at Exhibit Q.

On August 31, 2023, Plaintiff's motion was filed. Within this motion, Plaintiff referenced the November 2021 e-mails that were exchanged between

_____

[4] On October 2, 2023, Appellant submitted an updated privilege log, which identified Bates No. 1515 as an e-mail from Appellant to Attorney Schmerling and POA Cowan, concerning "[p]ayment of invoices, nomination of agent under [Power of Attorney], and estate planning." **See** Appellant's Privilege Log, 10/2/23, at R.R. 270.

- 4 -

Appellant, Attorney Schmerling, and POA Cowan – concerning Appellant's Power of Attorney – which Appellant forwarded to Plaintiff and Defendant Leigh. In his motion, Plaintiff claimed that, since "e-mail correspondence from [Appellant's] counsel containing legal advice relating to [Appellant's] Power of Attorney was disclosed to a third party . . . and then also subsequently produced in this litigation, [Appellant] waived the attorney-client privilege with respect to e-mail communications pertaining to this subject matter." Plaintiff's Motion, 8/31/23, at 17. Plaintiff thus requested that Appellant be ordered to produce "all communications between [Attorney Schmerling] and [Appellant] pertaining to [Appellant's] Power of Attorney." *Id.* Plaintiff also requested that the trial court order Appellant to produce all withheld documents concerning "estate planning," as "[Appellant] waived the attorney-client privilege with respect to these documents." *Id.* at 18.

The trial court held oral argument on Plaintiff's Motion and, on October 6, 2023, the trial court issued the following order:

> The objections asserted by [Appellant] to the production of certain documents in response to the May 4, 2023, subpoena *duces tecum* based upon the attorney-client privilege, as set forth in [Appellant's] privilege log attached hereto, are OVERRULED, except for [Bates] document numbered 1502.

Trial Court Order, 10/6/23, at 1.

Within its Rule 1925(a) opinion, the trial court expounded upon the basis for its October 6, 2023 discovery order. As the trial court first explained, regarding the e-mails exchanged from November 1, 2021 to November 8, 2021, between Appellant, Attorney Schmerling, and POA Cowan – and which

concerned Appellant's Power of Attorney – since the e-mails were shared with third-persons and disclosed during the course of the litigation, Appellant waived the attorney-client privilege with respect to those e-mails, as well as to any other documents dealing with the subject matter of Appellant's Power of Attorney. *See id.* at 11-13. Thus, the trial court held, Appellant waived the attorney-client privilege as to the document with Bates Stamp Number 1515, as that was identified as a document that concerned Appellant's Power of Attorney. *Id.* at 13. Moreover, the trial court held, any document concerning Appellant's "estate planning" was not protected by the attorney-client privilege because "information provided by the client to the estate planning lawyer [is] intended to be disclosed to third parties." *Id.* at 13-14.

Appellant filed a notice of appeal from the trial court's October 6, 2023 collateral order[5] and claims: 1) the trial court erred when it held that "[s]ubject matter waiver . . . appl[ies] to waive the attorney-client privilege as to communications between [Appellant] and his counsel for 'estate planning' purposes based upon a prelitigation disclosure of an [e-mail] addressing a completely different subject, namely a power of attorney;" and, 2) the trial court erred when it concluded that the attorney-client privilege did not apply to communications for "estate planning" purposes, on its stated

---

[5] **See**, *e.g.*, *In re Estate of McAleer*, 248 A.3d 416, 424 (Pa. 2021) ("[d]iscovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313") (quotation marks and citations omitted).

basis that the communications were "intended to be disclosed to third parties." Appellant's Brief at 15-32. The learned Majority concludes that both of Appellant's claims fail. **See** Majority Memorandum at \*\*8-13. I agree that Appellant's "subject matter waiver" claim fails (although for a slightly different reason than given by the Majority), but respectfully disagree with both the trial court and the Majority regarding the blanket waiver of the "estate planning" documents. I thus concur in part and dissent in part.

Appellant first claims the trial court erred when it concluded that the disclosure of the November 2021 e-mails waived the attorney-client privilege as to the entire subject matter of "estate planning," when the e-mails dealt only with the subject matter of Appellant's Power of Attorney. Appellant's Brief at 28-32. This claim immediately fails, as the trial court never held that the e-mail disclosure waived the attorney-client privilege on the subject matter of "estate planning." Instead, as the trial court carefully explained, the disclosure of the e-mails waived the attorney-client privilege as to "any document referencing the [**Power of Attorney**]." Trial Court Opinion, 6/7/24, at 13 (emphasis added). Since Appellant takes no issue with this particular conclusion, Appellant's claim on appeal necessarily fails.

Next, Appellant claims that the trial court erred when it concluded that the attorney-client privilege did not apply to communications for "estate planning" purposes, as those communications were necessarily "intended to be disclosed to third parties." I agree with Appellant and conclude that the trial court erred in this regard.

As the United States Supreme Court explained:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. . . . The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out. . . . [I]n **Fisher v. United States**, 425 U.S. 391 (1976), [the Supreme Court] recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." This rationale for the privilege has long been recognized by the [Supreme] Court, **see Hunt v. Blackburn**, 128 U.S. 464 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

**Upjohn Co. v. United States**, 449 U.S. 383, 389 (1981) (some quotation marks and citations omitted). Further, as the Supreme Court recognized, "[a]s a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." **Fisher v. United States**, 425 U.S. 391, 403 (1976).

Nevertheless, "since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures necessary to obtain

informed legal advice which might not have been made absent the privilege." *Id.* Thus, "[i]n general, communications made in public or in the presence of third persons who are not within the professional relationship will not be deemed confidential. [Moreover, c]ommunications intended to be relayed to those outside the professional relationship are generally not privileged." Greenwald *et al.*, 1 TESTIMONIAL PRIVILEGES § 1:47 (3d ed. 2025). However, "drafts and other related materials may be privileged even where the final version is disclosed." *Id.*

Essentially, the trial court and the Majority hold that communications between an attorney and a client for "estate planning" purposes are categorically not privileged, as those communications were "intended to be disclosed to third parties." Trial Court Opinion, 6/7/24, at 14; Majority Memorandum at **12-13. Respectfully, I believe this conclusion constitutes clear error.

At the outset, the attorney-client privilege cannot be defeated simply because communications dealing with "estate planning" might result in a final, published will, irrevocable trust, or power of attorney. The trial court did not perform an *in camera* review of any of the "estate planning" documents in this case. Thus, regarding the "estate planning" documents exchanged between Appellant and his attorneys, there is simply no evidence that Appellant sought his attorneys' advice with the intent of creating some final, published document. *See*, *e.g.*, *CLL Acad., Inc. v. Acad. House Council*, 231 A.3d 884, 889 (Pa. Super. 2020) ("[t]he privilege log is the primary source for

determining whether attorney-client privilege or work-product privileges apply. Where the log alone does not permit meaningful analysis of the underlying claim or the scope of the asserted privilege, *in camera* review is available. ***See*** Pa.R.C.P. 4003.3. As we acknowledged in ***Berg v. Nationwide Mutual Ins. Co.***, 44 A.3d 1164, 1179 (Pa. Super. 2012), '[*i*]*n camera* review is a valuable tool for determining the validity of privilege claims, and in many instances, it is difficult to make an informed decision regarding privilege without such an inspection'").

Second, in the course of estate planning, a client might confide in his or her attorney as to any number of highly sensitive family and financial details that he or she does not wish to be reflected in the final documents – and that, relying on the attorney-client privilege, he or she should rightfully trust will not be disclosed. Moreover, an attorney might provide estate planning advice that he or she does not wish to disclose to anyone other than the client. ***See Gillard v. AIG Ins. Co.***, 15 A.3d 44, 59 (Pa. 2011) ("in Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice"). The categorical rule imposed by the trial court and the Majority destroys the expectations of both the attorney and the client and, in turn, destroys the attorney-client privilege

as to an extraordinarily broad range of communications – *to wit*, any communications that might result in a final, published document.[6]

In this type of case, I believe the proper rule was set forth in ***United States v. Schlegal***, 314 F.Supp. 177, 179 (D. Neb. 1970). The ***Schlegal*** court declared:

> [A] . . . more realistic rule would be that the client intends that only as much of the information will be conveyed to the [third party] as the attorney concludes should be, and ultimately is, sent to the [third party]. In short, whatever is finally sent to the [third party] is what matches the client's intent. The fact that the client has relinquished to his attorney the making of the decision of what needs to be included within the [final, published document] should not enlarge his intent or decrease the scope of the [attorney-client] privilege. A different rule would not really support the purpose of the privilege, which is to encourage free disclosure of information by the client to the attorney. If the client, not knowing what the attorney would advise be sent or would choose to send to the [third-party], were to think that all information given to his attorney would lose its confidential status by the act of delivery to his attorney, the tendency would be to withhold information which he, without advice of counsel, would suppose was detrimental to him, the client. Thus the attorney, the very one professionally capable of evaluating information, could be of no help in evaluating it, because he would not receive it.

---

[6] Taken to its logical conclusion, the rule imposed by the trial court and accepted by the Majority would result in the waiver of the attorney-client privilege surrounding **any** final, published document – be it a contract, a settlement agreement, or a complaint. I cannot believe that conversations between an attorney and his or her client surrounding the creation of these documents would lose their privilege simply because the final contract or settlement agreement is exchanged between the parties, or the complaint is filed with the court.

*United States v. Schlegal*, 314 F.Supp. 177, 179 (D. Neb. 1970). Thus, I would conclude that:

> the attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons. With regard to preliminary drafts of documents intended to be made public, [I would conclude] that preliminary drafts may be protected by the attorney-client privilege. Preliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege. The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties.

*Schenet v. Anderson*, 678 F.Supp. 1280, 1283-1284 (E.D. Mich. 1988); *see also Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) ("most courts have found that even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact"); 1 MCCORMICK ON EVIDENCE § 91 (9th ed. 2025) ("If the goal of the attorney-client privilege is to encourage a free flow of communications between attorney and client, preliminary conversations and drafts reflecting those conversations ought to be protected. The client and her attorney ought to be able to discuss the precise terms of the disclosure, including drafting wording reflecting the best way to communicate the information, without the risk that matters ultimately determined not to be disclosed would be unprivileged").

In conclusion, I believe the Majority erred in adopting the trial court's categorical rule and in holding that the attorney-client privilege does not apply

to communications dealing with "estate planning." I would vacate the trial court's order, which compelled the production of all "estate planning" documents, and remand for an *in camera* review of the documents. I thus dissent.