**Vincenza DiGREGORIO and Nello Di-Gregorio, Individually and t/a DiGregorio Trucking Co., Appellants**

v.

**KEYSTONE HEALTH PLAN EAST, a Division of Independence Blue Cross and Fortis Insurance Co., Appellees.**

Superior Court of Pennsylvania.

Argued April 8, 2003.
Filed Dec. 29, 2003.

Ronald H. Beifeld, Plymouth Meeting, for appellants.

Jeanne M. Proko, Lansdale, for appellees.

Before: JOHNSON, FORD ELLIOTT, JOYCE, STEVENS, ORIE MELVIN, LALLY–GREEN, BENDER, BOWES and GRACI, JJ.

OPINION BY BOWES, J.:

¶ 1 In this appeal, we examine the coordinate jurisdiction rule. Nello and Vincenza DiGregorio, individually and doing business as DiGregorio Trucking Company ("Appellants"), appeal from an order entering judgment in favor of Appellee, Keystone Health Plan East ("Keystone"), due to Appellants' failure to state a cause of action upon which relief could be granted. We affirm.

¶ 2 On April 1, 1999, Mrs. DiGregorio was treated at Warminster Hospital for possible heart trauma. As a result of her treatment, Appellants incurred $9,785 in hospital charges. Appellants submitted the bill to Keystone, their insurance carrier, which refused to pay, claiming that Appellants no longer were insured. According to Keystone, the insurance coverage was canceled as of February 28, 1999, after DiGregorio Trucking withdrew its membership from the Greater Philadelphia Chamber of Commerce, the organization

that was insured under the plan. Prior to incurring the hospital charges, Appellants purchased "gap coverage" from Fortis Insurance Company ("Fortis"). However, Fortis refused to honor the contract.

¶ 3 Appellants filed a complaint on September 29, 1999, against Keystone and Fortis alleging breach of contract and statutory bad faith. The complaint demanded compensatory damages, punitive damages, attorneys' fees, and costs. Appellants sought punitive damages pursuant to 42 Pa.C.S. § 8371 [1] entitled, "Actions on insurance policies." Keystone filed preliminary objections against the complaint because, as a health maintenance organization ("HMO"), it was exempt from the aforementioned provision under 40 P.S. § 1560. Thereafter, on December 20, 1999, Appellants filed an amended complaint in which they sought punitive damages under a theory of common law bad faith. Keystone filed preliminary objections to the amended complaint alleging it was filed improperly, but the trial court overruled the objections. Likewise, the trial court denied Keystone's subsequently filed motion for judgment on the pleadings.

¶ 4 Eventually, Appellants settled the action against Fortis for $3,000, and on June 6, 2000, the parties stipulated to Fortis's dismissal. The suit against Keystone was tried on July 25, 2000, before a compulsory arbitration panel. The panel awarded Appellants $9,785.10 in compensatory damages, but it did not award punitive damages. Keystone filed a timely notice of appeal from the arbitration award to the court of common pleas.

¶ 5 At some point between the arbitration award and the scheduled trial date, Keystone satisfied the hospital bill in full. Thereafter, on February 9, 2001, Keystone filed a motion for summary judgment, asserting that Appellants no longer had a viable claim for damages. Specifically, Keystone argued that since the entire action was reduced to a claim for punitive damages, a claim precluded as a matter of law on a contract action, Appellants had no recoverable damages. Appellants responded by claiming that it was ignorant of any transaction between Keystone and Warminster Hospital. Alternatively, Appellants argued that despite Keystone's alleged satisfaction of the hospital bill, Appellants remained entitled to punitive damages, attorneys' fees, and costs. On March 23, 2001, the court denied the motion summarily without hearing or discussion. Appellants continued to prosecute the suit against Keystone for punitive damages.

¶ 6 On September 19, 2001, the parties appeared before the trial court assigned to hear the case. While in chambers, Keystone sought an offer of proof concerning the nature of Appellants' damages. The parties did not record their discussion, and the court did not rule on the offer of proof at that time. Instead, the parties selected and impaneled a jury, and the trial court swore the jury to hear the case.

¶ 7 On September 20, 2001, the parties continued the prior day's discussion, and Keystone orally moved for dismissal on the record. After argument, the trial court granted Keystone's motion to dismiss stat-

---

1. 42 Pa.C.S. § 8371 provides as follows:
   In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
   (2) Award punitive damages against the insurer.
   (3) Assess court costs and attorney fees against the insurer.

ing, "I reviewed the materials[,] and it is clear to me that [Keystone's] motion for dismissal for failure to state a cause of action should be granted. It is, in fact, granted . . . ." N.T. Trial, 9/20/01, at 10, 11. Thereafter, on September 25, 2001, the trial court entered a trial worksheet on the docket with the notation "finding for defendant." Appellants did not file a motion for post-trial relief; instead, they filed a direct appeal to this Court. Keystone filed a motion to quash this appeal, contending that Appellants' failure to file post-trial motions rendered the appeal premature. However, for reasons discussed *infra*, we deny Appellee's motion and address the merits of the appeal.

■ ¶ 8 On appeal, Appellants raise three arguments. First, Appellants contend that the trial court erred in entering judgment for Keystone on the basis that Appellants were unable to establish punitive damages as a matter of law. Second, Appellants assert that the trial court's September 20, 2001 order granting dismissal violated the coordinate jurisdiction rule embodied in the law of the case doctrine. Finally, Appellants assert that they were not required to file a motion for post-trial relief pursuant to Pa.R.C.P. 227.1 to preserve these issues on appeal. As the preservation issue would obviate the need to address the merits of this appeal, we first address the motion to quash.

■ ¶ 9 Appellants maintain that they were not required to file a motion for post-trial relief under Rule 227.1. We agree. Rule 227.1 governs the manner in which a party may seek post-trial relief from the trial court. Pursuant to Rule 227.1(c), "Post-trial motions shall be filed within ten days after (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or (2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without

jury or equity trial." A motion for post-trial relief may not be filed pursuant to an order disposing of a motion for summary judgment or other motion relating to a proceeding other than trial. *See Bostick v. Schall's Brakes and Repairs, Inc.*, 725 A.2d 1232 (Pa.Super.1999) (post-trial motions may not be filed to orders disposing of pretrial motions or motions related to proceedings not considered trial). Therefore, our resolution rests on the nature of the trial court's disposition.

¶ 10 Since the trial court disposed of the motion in chambers and since the jury heard no evidence, we cannot construe the trial court's disposition as a verdict, discharge due to the jury's failure to agree, or nonsuit. Rather, we conclude that the purported motion to dismiss either was a motion for judgment on the pleadings or a motion for summary judgment. *See Bostick, supra*; *cf. Lewis v. United Hospitals, Inc.*, 547 Pa. 626, 692 A.2d 1055 (1997) (improper entry of nonsuit prior to plaintiff's evidence treated as judgment on the pleadings or summary judgment which did not require post-trial motions); *Wujcik v. Yorktowne Dental Associates, Inc.*, 701 A.2d 581 (Pa.Super.1997) (noting that trial court should have treated objection to plaintiff's offer of proof before trial as summary judgment or motion for judgment on pleadings).

■ ¶ 11 Pennsylvania jurisprudence does not recognize a "motion to dismiss" in the context of civil litigation, and Keystone did not raise Appellants' failure to state a cause of action upon which relief can be granted as a preliminary objection in the nature of a demurrer pursuant to Pa. R.C.P. 1028(a)(4). The only other available means to demur to a plaintiff's cause of action is either a motion for judgment on the pleadings or a motion for summary judgment. *See Miller v. Nelson*, 768 A.2d 858, 860 (Pa.Super.2001). "A motion for

judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Citicorp North America, Inc. v. Thornton,* 707 A.2d 536, 538 (Pa.Super.1998)). Motions for judgment on the pleadings and summary judgment motions involve similar considerations; however, the motions differ in relation to the trial court's scope of inquiry. *Harvey v. Hansen,* 299 Pa.Super. 474, 445 A.2d 1228 (1982). While a motion for judgment on the pleadings is limited to the averments contained in the pleadings, a motion for summary judgment may rely on outside material contained in the record. *Id. See* Pa.R.C.P. 1034; Pa.R.C.P. 1035. As the trial court's irregular disposition can only be considered an entry of judgment on the pleadings or a grant of summary judgment, Appellants were not required to file a post-trial motion. *See Bostick, supra.*

¶ 12 Appellants level a claim that the trial court's entry of judgment in favor of Keystone violated the coordinate jurisdiction rule, an aspect of the law of the case doctrine that prevents a court from re-examining an issue that previously was resolved by a court of concurrent jurisdiction. Keystone argues that this issue is waived under Pa.R.A.P. 302 due to Appellants' failure to raise it on the record before the trial court. However, for the following reasons, we will address the merits of Appellants' argument.

¶ 13 If the trial court's disposition is construed as a grant of judgment on the pleadings, it was improper, and strict compliance with Pa.R.A.P. 302 was unnecessary. *Cagnoli v. Bonnell,* 531 Pa. 199, 611 A.2d 1194 (1992). In *Cagnoli,* our Supreme Court reversed this Court's determination that an appellant waived his argument opposing the grant of judgment on the pleadings because he failed to raise it before the trial court. In that case, the motion was presented on the morning of trial after the jury already had been impaneled. The Supreme Court reasoned that by considering the motion on the morning of trial, the trial court denied the appellant a full and fair opportunity to prepare his legal arguments in opposition. *Id.* Compare *McIntyre Square Associates v. Evans,* 827 A.2d 446 (Pa.Super.2003) (appellant was not denied opportunity to oppose motion entered on morning of trial where identical issue was briefed and discussed during earlier motion before that court and trial court's action was akin to reconsideration of its previous disposition). Hence, the Court in *Cagnoli* concluded that the appellant preserved the issue by raising it at the first opportunity following the entry of judgment. *Cagnoli, supra.*

¶ 14 Likewise, in the case *sub judice,* Keystone presented its oral motion on the morning of trial after the jury already had been impaneled. Although Appellants failed to raise the issue during the ensuing discussion, they raised it at the first opportunity following the entry of judgment, in their Pa.R.A.P.1925(b) concise statement of matters complained of on appeal. Accordingly, we find that waiver is not warranted under the circumstances of this case.

¶ 15 Similarly, if the trial court's disposition is characterized as a grant of summary judgment, it also was procedurally defective. Generally, it is improper for a trial court to entertain a motion for summary judgment filed on the morning of trial. *See Kramer v. Dunn,* 749 A.2d 984 (Pa.Super.2000) (unless trial court has benefit of extensive record and non-moving party has opportunity to respond thoroughly, trial court should not entertain summary judgment on day of trial). Moreover, since Key-

stone failed to file a written motion, the trial court should not have addressed the merits of the motion. *See Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681 (1995) (absent written document, oral request for summary judgment pursuant to Rule 1035, which was rescinded and renumbered Pa.R.C.P. 1035.1—1035.5, is insufficient); *Tohan v. Owens–Corning Fiberglas Corp.*, 696 A.2d 1195 (Pa.Super.1997) (same).

¶ 16 By granting an oral motion for summary judgment on the morning of trial, the trial court denied Appellants the opportunity to preserve their issues in a written response filed pursuant to Pa.R.C.P. 1035.5. Although a trial court may grant summary judgment without providing an opportunity to file a responsive brief if the record supports the determination and there is no prejudice to the opposing party, *Myszkowski v. Penn Stroud Hotel, Inc.*, 430 Pa.Super. 315, 634 A.2d 622 (1993), instantly, the trial court's unusual disposition prejudiced Appellants by denying them the opportunity to preserve the legal argument they now seek to advance on appeal. Thus, we will address the merits of Appellants' coordinate jurisdiction issue.

¶ 17 Appellants contend that the trial court's disposition essentially was a grant of summary judgment and, as such, it was entered in contravention of the coordinate jurisdiction rule since the motion court's earlier decision was the law of the case as to the issue addressed therein. At first blush, this contention appears to have merit; however, upon closer examination we find that the trial court's decision fits within an exception carved from the general rule.

¶ 18 According to the Pennsylvania Supreme Court, "[A] court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). The Court explained the focus of the rule as follows:

> [The coordinate jurisdiction rule] seek[s] to ensure fundamental fairness in the justice system by preventing a party aggrieved by one judge's interlocutory order to attack that decision by seeking and securing relief from a different judge of the same court, thereby forcing one's opponent to shift the focus of his trial strategy in the matter.

*Id.* at 575, 664 A.2d at 1332 (citations omitted). In *Okkerse v. Howe*, 521 Pa. 509, 517, 556 A.2d 827, 831 (1989), our Supreme Court noted, "[T]his rule is not a matter of jurisdiction *per se*; rather it is a rule of sound jurisprudence based on the policy of fostering finality of pre-trial applications so that judicial economy and efficiency can be maintained."

¶ 19 However, our Supreme Court has articulated the following exceptions to the rule:

> Departure from [this principle] is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed.

*Starr, supra* at 575–76, 664 A.2d at 1332.

¶ 20 Our Supreme Court recently revisited the coordinate jurisdiction rule in *Zane v. Friends Hospital*, —— Pa. ——, 836 A.2d 25 (Pa.2003), and employed the clearly erroneous exception as a departure from the general rule. The plaintiff in *Zane* instituted a negligence action against Friends Hospital after she was kidnapped,

physically assaulted, and raped by Ronald E. Anderson, a patient the plaintiff had befriended while both were receiving treatment at the hospital. The plaintiff's action alleged that the hospital was negligent in both its treatment of Anderson and its failure to protect the plaintiff from Anderson or warn her of his proclivity for violence. The plaintiff sought Anderson's psychiatric records to demonstrate the hospital's knowledge of Anderson's violent history. The hospital refused the discovery request, claiming that the disclosure of a patient's confidential information was precluded under the Mental Health Procedure Act, 50 P.S. § 7111.

¶ 21 Thereafter, the plaintiff filed a motion to compel, which was denied by the Honorable Albert W. Sheppard. However, on May 6, 1997, Judge Sheppard entered a second order directing the production of all documentation concerning the history Anderson provided to the hospital, for *in camera* inspection. On November 21, 1997, this Court rejected the hospital's interlocutory appeal from that order. Nonetheless, the hospital refused to produce the documents, and the plaintiff filed a motion seeking sanctions against the hospital for its failure to comply with the discovery order. On March 10, 1998, the Honorable Nitza I. Quinones Alejandro denied the plaintiff's request to enforce the May 6, 1997 order, thereby implicitly vitiating Judge Sheppard's prior ruling regarding the applicability of the Mental Health Procedure Act.

¶ 22 The hospital subsequently filed a motion for summary judgment because the plaintiff could not establish that the hospital knew or should have known of Anderson's propensity for violence. On June 28, 1999, the Honorable Howland W. Abramson granted the motion and entered judgment in favor of the hospital. On appeal, this Court determined that Judge Alejandro's May 6, 1997 order violated the coordinate jurisdiction rule. Accordingly, we vacated that order and the entry of summary judgment in favor of the hospital and remanded the matter for further proceedings.

¶ 23 Our Supreme Court granted allowance of appeal to determine whether we improperly applied the coordinate jurisdiction rule in light of the clear authority supporting Judge Alejandro's decision. At the outset of its analysis, the Supreme Court outlined the coordinate jurisdiction rule as it was articulated in *Starr* and examined the rule's purpose, which it described as follows:

> [T]he coordinate jurisdiction rule is based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. Furthermore, consistent with the law of the case doctrine, the coordinate jurisdiction rule serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation.

836 A.2d at 29 (citations and quotations omitted). The Supreme Court also identified the clearly erroneous exception to the general rule, explaining the goal of the exception as follows:

> To accede to a coordinate judge's order that is clearly erroneous would be not only to permit an inequity to work on the party subject to the order, but would allow an action to proceed in the face of almost certain reversal on appellate review. Moreover, the requirement that the prior holding also create a manifest injustice serves ·as a significant curb on the exception so that it would apply to only those situations in which adhering

to the prior holding would be, in essence, plainly intolerable.

*Id.* at 29–30

¶ 24 Afterward, the Court employed a two-part analysis to determine whether the clearly erroneous exception applied to the circumstances of the case before it. First, the Court examined the statutory scheme to determine whether Judge Sheppard's order compelling a limited review of Anderson's record was clearly erroneous in light of the confidentiality provision of the Mental Health Act or the statutory provisions concerning the confidential communications to psychiatrists or licensed psychologists under 42 Pa.C.S. § 5944.

¶ 25 After reviewing the prevailing statutory authority, the Supreme Court concluded that the unambiguous terms of the Mental Health Procedures Act precluded disclosure of any documents concerning a patient's treatment absent written consent or the existence of an exception. Since Anderson did not consent to disclosure, and none of the exceptions applied therein, the Supreme Court concluded that Judge Sheppard's order compelling disclosure was clearly erroneous.

¶ 26 Next, the Court addressed whether Judge Sheppard's order would produce a manifest injustice if it were allowed to stand. According to the Court, the disclosure of a patient's mental health records contradicts the principles of effective treatment, and if allowed, the disclosure would prevent others from seeking needed treatment for fear of publication. The court described these principles as follows:

> The confidentiality of mental health records is the *sine qua non* of effective treatment.
>
> . . . .
>
> The importance of confidentiality cannot be overemphasized. To require the hospital to disclose mental health records during discovery would not only violate Anderson's statutory guarantee of confidentiality, but would have a chilling effect on mental health treatment in general.

*Id.* at 33–34.

¶ 27 Thus, since blind reliance on the previous order would have brought about a manifest injustice, the Supreme Court concluded that Judge Alejandro's refusal to enforce Judge Sheppard's prior discovery order fell within the clearly erroneous exception.

¶ 28 In the case *sub judice*, the trial court concluded that the motion court's previous ruling was patently erroneous. The trial court implicitly invoked the clearly erroneous exception to the coordinate jurisdiction rule, reasoning as follows:

> [The] decision to deny, on the pleadings and without hearing, [Keystone's] Motion for Summary Judgment was clearly in error. In oral argument, [Appellants] admitted this was only a claim for punitive damages on a contract action. (N.T., 9/20/01, p. 2). [Appellants] also admitted such claims are not legally permitted. (N.T., 9/20/01, p. 7, 8).
>
> . . . .
>
> By denying the Motion for Summary Judgment, [the motions court] moved the case, which did not present a cause of action, to the trial-ready pool.

Trial Court Opinion, 11/15/01, at 6–7. Since the clearly erroneous exception applies only if the motion court's decision was clearly erroneous and would create a manifest injustice if followed, we must address the substance of Appellants' claims.

¶ 29 Punitive damages are awarded, in addition to a plaintiff's actual damages, to punish a defendant for outrageous acts and to deter him or others from engaging in similar conduct. *Reading Radio, Inc. v. Fink,* 833 A.2d 199

(Pa.Super.2003); BLACK'S LAW DICTIONARY 390 (6th ed. 1990). It is settled law that one cannot recover punitive damages independently from an underlying cause of action. *See Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959) (punitive damages are incident to underlying cause of action, not the subject of the action itself). In *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 101, 555 A.2d 800, 802 (1989) (emphasis in original), our Supreme Court reiterated this principle as follows, "If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an **element** of damages." Instantly, Appellants' contract action was extinguished once Keystone satisfied the outstanding debt to Warminster Hospital. Hence, there was no independent cause of action upon which Appellants could attach a punitive damages claim. Accordingly, the trial court properly entered judgment in favor of Keystone.

¶ 30 Even if the cause of action for breach of contract had not been resolved, Appellants could not recover punitive damages for an action solely sounding in breach of contract. *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928 (1984). In *Johnson v. Hyundai Motor America*, 698 A.2d 631, 639 (Pa.Super.1997) (citations and quotations omitted), we observed that punishment is inconsistent with traditional contract theories, stating as follows:

> Whereas in contract actions, damages are awarded to compensate an injured party for the loss suffered due to the breach, the purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as a punishment function.

Thus, under Appellants' breach of contract claim, they are not entitled to punitive damages. *Thorsen, supra.*

¶ 31 Finally, under the alternative theory of common law bad faith presented in their complaint, Appellants are also precluded from recovering punitive damages. Since "bad faith" is not a recognized common law action in tort, Appellants cannot assert punitive damages on this basis. *See D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981) (no common law remedy for bad faith claim against insurer); *Mishoe v. Erie Insurance Co.*, 762 A.2d 369, 375 n. 6 (Pa.Super.2000) (same).[2] Moreover, Appellants cannot assert a statutory entitlement to punitive damages because Pennsylvania specifically exempts HMOs, such as Keystone, from statutory bad faith claims under 42 Pa.C.S. § 8371. *See* 40 P.S. § 1560.[3] Thus, we find that Appellants

---

**2.** Mindful of this express prohibition, we are not inclined to mold a common law right of action in bad faith based solely on our Supreme Court's general recognition in *Dercoli v. Pennsylvania National Mutual Insurance Co.*, 520 Pa. 471, 554 A.2d 906 (1989), that insurance companies owe their insureds a duty of fair dealing. Since the insured in that case did not assert a claim for punitive damages, *Dercoli* is not dispositive.

**3.** 40 P.S. § 1560 provides, in pertinent part, as follows:
   a) Except as otherwise provided in this act, a health maintenance organization operating under the provisions of this act shall not be subject to the laws of this State now in force relating to insurance corporations engaged in the business of insurance nor to any law hereafter enacted relating to the business of insurance unless such law specifically and in exact terms applies to such health maintenance organization. For a health maintenance organization established, operated and maintained by a corporation, this exemption shall apply only to the operations and subscribers of the health maintenance organization.

had no cause of action for a claim for punitive damages, and the trial court property entered its order in favor of Keystone.

¶ 32 Likewise, absent a fee-shifting statutory or contract provision to the contrary, Appellants are not entitled to attorneys' fees. Parties to a dispute are responsible for their own attorneys' fees. *See McCauslin v. Reliance Finance Co.*, 751 A.2d 683 (Pa.Super.2000); *Gardner v. Clark*, 349 Pa.Super. 297, 503 A.2d 8 (1986). Appellants do not assert any statutory or contractual entitlements to attorneys' fees. Instead, they ask this Court to apply a common law exception that provides plaintiffs with discretionary attorneys' fees against an insurance company in limited situations where it has breached a duty to defend.

¶ 33 Appellants attempt to equate Keystone's contested contractual obligations with an insurance company's duty to defend an insured from a third party. This analogy is untenable. First, it presupposes that Keystone was contractually obligated to pay the hospital debt, thereby ignoring the fact that the status of Appellants' policy was at the heart of the dispute. Although Keystone eventually paid the hospital bill, it steadfastly denied any contractual obligation to Appellants once it issued notice that it had canceled the policy. Moreover, as Keystone observes, the

legal predicates for the aforementioned obligations are dissimilar because they involve different contractual relationships. Consequently, Appellants' putative claim for attorneys' fees lacked an independent foundation as well.

¶ 34 Accordingly, there was no viable cause of action for either punitive damages or attorneys' fees, and the motions court's order to the contrary clearly was erroneous. Moreover, by allowing Appellants to proceed without a viable cause of action, the motions court subjected Keystone to a manifest injustice. In this context, a manifest injustice causes substantive harm so significant that justice demands that a reviewing court nullify the infirm determination because "adhering to the prior holding would be, in essence, plainly intolerable." *Zane, supra*, 836 A.2d at 30.

¶ 35 Instantly, the motion court's decision forced Keystone to incur additional expense as it continued to defend against an unwarranted claim over a six-month period. Furthermore, since the order clearly was subject to certain reversal on appeal, the order allowing Appellants to proceed to trial with a totally frivolous claim, would have squandered the judicial resources of the trial court and this Court as well. Thus, under the circumstances presented in this case, we conclude that adherence to the motions court's order was

(b) All health maintenance organizations shall be subject to the following insurance laws:
  (1) The act of July 22, 1974 (P.L. 589, No. 205), known as the "Unfair Insurance Practices Act."
The Unfair Insurance Practices Act does not recognize a private cause of action for bad faith, and its exclusive remedies do not include punitive damages.

Without commenting on the merits of Appellants' claim, we note that a system which insulates HMOs from bad faith claims while subjecting insurance companies to punitive damages for identical conduct may appear unfair. However, we also observe that the General Assembly chose to employ this approach, and it is not the role of the courts to disturb the legislature's clear dictate. *See In re Jones & Laughlin Steel Corp.*, 263 Pa.Super. 378, 398 A.2d 186, 193 (1979) (quoting *Lurie v. Republican Alliance*, 412 Pa. 61, 65, 192 A.2d 367, 370 (1963) ("The enunciation of matters of public policy is fundamentally within the power of the legislature ... [and unless it is contrary to public health, safety, morals or welfare], [i]t is not for us to legislate.")).

intolerable and the trial court's decision to overrule the prior order fell within the clearly erroneous exception.

¶ 36 Notwithstanding Appellants' want of a cause of action, we find that Appellants deserve an award of the taxable costs of litigation. *See Gregory v. Harleysville Mutual Insurance Co.*, 374 Pa.Super. 33, 542 A.2d 133 (1988) (generally, taxable costs are awarded to prevailing party); *see also* 42 Pa.C.S. § 1726(a) (absent enumerated exceptions, attorneys' fees are not taxable costs of litigation). For the purpose of awarding costs, the prevailing party is the party in whose favor the judgment is entered. *Profit Wize Marketing v. Wiest*, 812 A.2d 1270 (Pa.Super.2002). Although Appellants technically are not the prevailing party because judgment was not entered in their favor, they won their compensatory damages at arbitration, and Keystone effectively extinguished its *de novo* appeal to the common pleas court by satisfying the outstanding debt to Warminster Hospital; thus, we construe Appellants as the prevailing party under these limited circumstances. Therefore, we remand the matter with instructions for the trial court to award Appellants their taxable costs of litigation sustained up to the date Keystone satisfied the underlying debt.

¶ 37 Since the trial court properly re-evaluated Keystone's motion for summary judgment to rectify a manifest injustice by the motions court, we find that the trial court correctly entered judgment in this case. Hence, subject to the instructions we have noted above, we affirm the trial court's order.

¶ 38 Motion to quash denied. Order affirmed. Matter remanded. Jurisdiction relinquished.