J-A22039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GLENN HOLLAND | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE PHYSICAL THERAPY INSTITUTE, | : | |
| INC., SHANNON VISSMAN AND RYAN | : | |
| CHRISTOFF | : | No. 1515 WDA 2021 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered December 10, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD-18-011160

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: MARCH 17, 2023**

The Physical Therapy institute, Inc. ("PTI"), Shannon Vissman, and Ryan Christoff (collectively, "Appellants") appeal from the six-part discovery order that, *inter alia*, required the Appellants to provide an array of documents dealing with financial and investment-related matters as well as communications with counsel. On appeal, the Appellants chiefly contend that the lower court erred by not conducting an *in camera* review of the disputed documents prior to making its ruling. Moreover, the Appellants assert that the court committed various errors of law or abuses of discretion through its six discrete determinations. In response, in addition to substantively refuting the Appellants' arguments, Appellee Glenn Holland argues that we should quash

---

[*] Retired Senior Judge assigned to the Superior Court.

this appeal, as it was taken from a non-appealable interlocutory order. We quash in part, affirm in part, and remand this matter with instructions.

Despite being in a pre-trial posture, this matter features a complicated factual and procedural history. As best can be gleaned from the record,[1] Holland has filed a four-count complaint against the Appellants, with his amended complaint stating claims in breach of contract,[2] breach of fiduciary duty, and unfair trade practices.[3] Holland requests punitive damages at each claim.

By way of background, PTI is a Pennsylvania corporation that owns physical therapy clinics in Western Pennsylvania, including one in the Pennsylvania city of Warrendale. In turn, Vissman and Christoff own PTI. Meanwhile, Holland, a physical therapist and former salaried employee of PTI, worked as the Center Manager of PTI's Warrendale location.

Related to his position as Center Manager, Holland signed an

---

[1] We note that, as it stands, there are discrepancies between the parties and the court as to several important dates and events, likely due to where this case presently falls within the civil litigation continuum.

[2] Holland maintains that the Appellants breached both an employment agreement and a partnership agreement, with both claims emanating from the same document. **See** Amended Complaint in Civil Action, at 6-7 (asserting breach of employment agreement against PTI and breach of partnership agreement against Christoff and Vissman).

[3] Although not specified in the amended complaint, we presume Holland's unfair trade practices claim is pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). **See** 73 P.S. §§ 201-1 *et seq.*

employment agreement with PTI in 2013. Pursuant to that agreement, while still receiving a salary, Holland was eligible for a management bonus that was the equivalent of forty-nine percent of the Warrendale location's net income, as defined by the agreement. However, the agreement also required Holland to, *inter alia*, abide by PTI's policies, maintain appropriate patient records, and promptly prepare and file the records of all professional services provided to patients. The agreement further contained a noncompete clause and prohibited him from obtaining a personal interest in, broadly, non-PTI physical therapy offices or practices within a fifteen-mile radius "of any Holland facility operated by PTI." Employment Agreement, 1/9/13, at 4.

The agreement's Exhibit B specified two additional ways in which Holland would be compensated as it pertained to future contributions to PTI. Specifically, as written: (1) Holland had "the option, upon mutual agreement of [Holland] and PTI in writing … to participate in the funding of any newly founded PTI facility," *id*., at Ex. B, with compensation comparable to that of the Warrendale location; and (2) if Holland did not contribute capital, but had "material ongoing involvement in … a newly founded PTI facility, then upon mutual agreement of [Holland] and PTI in writing," *id*., he "may be eligible for additional compensation of up to [twenty-five percent]," *id*., of that facility's net income.

According to the Appellants, in spring of 2018, Holland had conveyed to PTI that he intended to open a new non-PTI facility that was within fifteen miles of the Warrendale location (identified as "Hopewell/Monaca"), which PTI

believed violated the agreement's non-compete clause. Moreover, PTI contends that around that same point in time, it started to receive numerous employee reports of Holland's actions that PTI also deemed to be violative of the agreement, which included him allegedly editing employee time records and treating patients without proper record-keeping.

That same year, on May 17, 2018, PTI terminated Holland for cause, stating in the corresponding notice that Holland had been in willful breach of various aspects of the agreement and had habitually acted neglectful in his conduct. Prior to that decision, PTI retained the law firm of Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini") to explore the information that had been contained in the employee reports discussing Holland's conduct.

After several email exchanges between Holland's counsel and an attorney at Wilson Sonsini, Holland filed the present lawsuit in August 2018. Correspondingly, the Appellants retained separate counsel and then filed an answer, new matter, and counterclaims.

During discovery, Holland's counsel deposed Christoff. At that deposition, Christoff was asked various questions about Wilson Sonsini's handling of the investigation into Holland's actions and the consequent employee reporting of those actions. According to Christoff, predicated on what was uncovered during the inquiry, the recommendation from Wilson Sonsini was that Holland should be terminated.

Thereafter, Holland sought to discover the Appellants' communications with Wilson Sonsini under the belief that the Appellants, in utilizing Wilson

Sonini's services, had put counsel's advice at issue in this case. Holland then filed a motion to compel the Appellants to produce documents that had been withheld under claims of privilege and identified on a privilege log. This filing led to the court conducting an *in camera* review of four documents, deeming three of them to not be privileged and ordering those to be produced. The fourth document, PTI's engagement letter with Wilson Sonsini, was determined to be privileged.

After these determinations, Holland issued subpoenas, seeking both documents and testimony from Wilson Sonsini as well as two of its attorneys, Marina Tsatalis, Esq., and Stuart Williams, Esq., who had been involved in the employee-complaint investigation. The Appellants challenged these subpoenas pursuant to Pennsylvania Rule of Civil Procedure 4009.21, eventually also filing motions for protective orders to quash the subpoenas, objecting on the bases of the attorney-client privilege and work-product doctrine. As indicated by the lower court:

> Holland attempted to subpoena records from Wilson Sonsini because a principal of PTI testified late in the case that Wilson Sonini told them before Glenn Holland was terminated that Glenn Holland had engaged in theft. [Plaintiff's counsel] had notes from the investigation. Nothing in the notes concludes that [Holland] engaged in theft. [T]he agreement with PTI says [Holland] can't be terminated for theft unless he is convicted of it, [a]nd there hasn't even been a prosecution for theft. At this time counsel for Wilson Sonsini alleged his clients had not been properly served with a subpoena and therefore this issue was not properly before the [c]ourt. In an effort to "cut to the chase" the [c]ourt asked counsel for Wilson Sonsini if he had the authority to accept the subpoena on behalf of his clients[.] Counsel informed the [c]ourt he did not have any such authority. Counsel for PTI informed the

[c]ourt it did not have any additional documents to produce other than the three already produced pursuant to the [c]ourt's [o]rder. The [c]ourt then recessed the hearing to allow Wilson Sonsini's counsel to confer with his clients regarding acceptance of service and for PTI's counsel to confirm all documents had been turned over.

Immediately upon the commencement of the hearing … Wilson Sonsini … said it did not have authorization to accept the subpoenas. … Counsel for PTI then informed the [c]ourt there was one additional document that had not been produced and was withheld in error[.] PTI was directed to send the document to the [c]ourt for review. [At this time,] [c]ounsel for PTI informed the [c]ourt its representation had been terminated and it would not be providing the fourth document to the [c]ourt[.] [N]ew counsel entered an appearance and agreed to review the document and provide it. The document was eventually produced[.]

… [At a subsequent argument,] [t]he [c]ourt pointed out to counsel [that] Christoff and Vissman had already testified in depositions about asking their lawyers to perform an investigation which they then relied upon.

Trial Court Opinion, 4/12/22, at 2-4 (record citations and some internal quotation marks omitted). At or around this point, Holland also filed another motion to compel. Eventually, the lower court expressly denied one of the Appellants' motions to quash, but that order went no further in discussing document production, privileges, or the other subpoenas that had been sought.

The subpoena seeking documents from Wilson Sonsini requested, without limitation, all documents exchanged between Wilson Sonsini and the Appellants relating in any way to Holland. Wilson Sonsini responded by asserting attorney-client privilege and the work-product doctrine, indicating that it would then construct a privilege log, which was thereafter produced

and subsequently amended. Eventually, 293 pages of documents were identified as responsive to Holland's subpoena, whereafter 190 pages were authorized to be produced and 103 were determined to fall under the auspices of attorney-client privilege or work-product. Those 103 pages are all associated with events/dates taking place after Holland filed the present lawsuit.

As further discovery, Holland's counsel also deposed Vissman in his personal capacity,[4] which, similar to the Christoff deposition, inquired into communications with Wilson Sonsini. In addition, Vissman was asked about his business interests in other states, with Baylife Physical Therapy ("Baylife"), which has clinics in Florida and Colorado, being specifically named as one of his interests. Notably, all of the Baylife clinics were managed out of the same address, the one utilized by PTI. In addition, Vissman indicated that a private equity group was the majority owner of Baylife and, too, that Wilson Sonsini had some level of ownership interest.

Several days after this deposition, Holland filed a hybrid motion to compel and motion for sanctions. After Holland filed five additional supplements to this motion and oral argument was heard, the court issued the ultimate order giving rise to the current appeal. Therein, the court stated that:

---

[4] Vissman had already been deposed in his capacity as corporate designee of PTI.

(1) [Appellants] shall provide complete responses to [Holland's] Amended Requests for Production of Documents and Interrogatories Directed to [Appellants] on July 15, 2021;

(2) [Appellants] shall provide financial information for … any new clinics in Florida, Colorado or elsewhere – including Baylife, under the terms of the Court's July 28, 2020 Order;

(3) [Appellants] shall provide all documents exchanged with Wilson Sonsini regarding investment/ownership in clinics;

(4) Wilson Sonsini shall provide the documents identified in its amended privilege log and all documents not previously provided;

(5) Shannon Vissman's deposition shall be reconvened to testify about Wilson Sonsini, the advice it provided to him and PTI about Monaca/Hopewell, and the investments Wilson Sonsini made in new clinics;

(6) [Appellants] shall produce information about their personal net worth and financial capacity heretofore withheld, and Shannon Vissman shall be required to testify about how he paid for the Florida house he purchased in 2018.

Order, 12/10/21, at 1-2 (numbering added). The court justified its determination, in part, by illuminating that, based on the record, "the law firm which allegedly investigated and decided … Holland engaged in theft may have had a pecuniary interest in not having to share any ownership interest with … Holland and [further that] PTI has several ownership interests which were not previously disclosed in discovery." Trial Court Opinion, 4/12/22, at 4.

After this order was issued, the Appellants filed a motion for reconsideration, but that motion was never decided by the lower court. However, the Appellants filed a timely notice of appeal from the discovery order, and the relevant parties have complied with their respective obligations

under Pennsylvania Rule of Appellate Procedure 1925. Accordingly, this matter is ripe for disposition.

On appeal, the Appellants present four questions:

1. Did the lower court err in compelling (1) Appellants' lawyers to produce privileged documents, specifically in doing so without conducting *in camera* review; and (2) Vissman to testify about the advice his lawyer provided to him?

2. Did the lower court err in compelling the production of information regarding the Appellants' personal net worth as responsive to an alleged punitive damages claim and in doing so without setting any specific restrictions on that discovery?

3. Did the lower court err in compelling Appellants to produce confidential financial records of non-party-owned entities?

4. Did the lower court err in compelling the production of confidential financial records that Holland never requested during discovery?

Appellants' Brief, at 6-7.

Preliminarily, we must address the arguments raised in Holland's motion to quash filed in this Court,[5] as questions concerning order appealability implicate this Court's jurisdiction. **See Jacksonian v. Temple Univ. Health Sys. Found.**, 862 A.2d 1275, 1279 (Pa. Super. 2004) (citation omitted).[6]

---

[5] In response to Holland's January 31, 2022 motion to quash, this Court issued a *per curiam* order denying his motion without prejudice "to raise before the Merits Panel." Order, 3/17/22. Holland implicitly renewed his motion in his appellee brief through further discussion of the collateral order doctrine, identified *infra*. **See** Appellee's Brief, at 2-9, 71, 77.

[6] Despite the lower court's order having six distinct components, for ease of disposition, we address Holland's motion within the context of the questions the Appellants present in this appeal.

Holland asserts that we do not have jurisdiction because the appealed-from order is not final, *see* Pa.R.A.P. 341; ***Barak v. Karolizki***, 196 A.3d 208, 215 (Pa. Super. 2018) (establishing that an appeal, under normal circumstances, requires a final order), nor one that is interlocutory, yet appealable, ***see*** Pa.R.A.P. 311 (by right); Pa.R.A.P. 1311 (by permission).

Notwithstanding those general precepts, collateral orders that are not otherwise appealable may be appealed from if they satisfy the rigid dictates of Rule 313. ***See*** Pa.R.A.P. 313(a)-(b) (defining what is known as the "collateral order doctrine"). Manifesting as a three-part test, an appealable collateral order is one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." ***In re Bridgeport Fire Litigation***, 51 A.3d 224, 230 n.8 (Pa. Super. 2012) (citation omitted). If any one component of that test is not satisfied, we have no jurisdiction to adjudicate the corresponding appeal. ***See Spainer v. Freeh***, 95 A.3d 342, 345 (Pa. Super. 2014).

By way of further elaboration:

For the first prong of the analysis under Pa.R.A.P. 313(b), a court must determine whether the issue(s) raised in the order are separable from the central issue of the ongoing litigation. Under the second prong, in order to be considered too important to be denied review, the issue presented must involve rights deeply rooted in public policy going beyond the particular litigation at hand. An issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue

are significant relative to the efficiency interests sought to be advanced by the final judgment rule. Furthermore, with regard to the third prong of the analysis, our Supreme Court explained that whether a right is adequately vindicable or effectively reviewable, simply cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement.

*Bogdan v. American Legion Post 153 Home Assoc.*, 257 A.3d 751, 755-56 (Pa. Super. 2021) (citation omitted) (formatting altered).

The Appellants' first claim on appeal asserts that the court erred when it required the production of documents subject to privilege and work product concerns and contained within Wilson Sonsini's privilege log and further ordered Vissman to be deposed as to, *inter alia*, privileged matters.[7] These two contentions correspond, ordinally, to the fourth and fifth obligations contained in the at-issue order. *See* Order, 12/10/21, at 1-2.

"Generally, discovery orders are deemed interlocutory and not immediately appealable, because they do not dispose of the litigation. On the other hand, discovery orders requiring disclosure of privileged materials generally are appealable under Rule 313 where the issue of privilege is separable from the underlying issue." *Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.*, 143 A.3d 930, 936 (Pa. Super. 2016) (citations omitted).

Significantly, Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are

---

[7] Pursuant to the order, Vissman also is required to testify as to "investments Wilson Sonsini made in new clinics," Order, 12/10/21, at 2, which, given the remaining components of the order, will be addressed in tandem with Appellants' issue number three.

- 11 -

immediately appealable as collateral to the principal action. This Court has also recognized that an appellant's colorable claim of attorney-client and attorney work-product privilege can establish the propriety of immediate appellate review.

***Berkeyheiser v. A-Plus Investigations, Inc.***, 936 A.2d 1117, 1123-24 (Pa. Super. 2007); ***see also Commonwealth v. Flor***, 136 A.3d 150, 155 (Pa. 2016) ("[D]iscovery orders rejecting claims of privilege and requiring disclosure constitute collateral orders that are immediately appealable under Rule 313."); ***Gocial v. Independence Blue Cross***, 827 A.2d 1216, 1220 (Pa. Super. 2003) ("[O]ur courts held that [an] appellant's colorable claim of attorney-client and attorney work-product privilege ma[ke] appellate review proper.").

Based on a review of the order and what it purports to allow for discovery in its fourth and fifth items, i.e., Wilson Sonsini's client-related documents that were subsequently reduced to a privilege log as well as the required oral disclosure as to the advice of counsel given to Vissman by Wilson Sonsini, the Appellants have raised a colorable claim that these matters include attorney-client communications or protected attorney work product. Accordingly, the Appellants have inherently satisfied the three-pronged test required for applicability of the collateral order doctrine,[8] and we have jurisdiction to adjudicate the Appellants' substantive claim.

_____

[8] Separability is evident, as review of the privileged nature of these documents/prospective statements, at this juncture, is separable from what
*(Footnote Continued Next Page)*

- 12 -

Substantively, the Appellants seek, prior to production, *in camera* review of the documents that potentially implicate the attorney-client privilege and work-product doctrine. As with all discovery-related issues, "in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." **Gormley v. Edgar**, 995 A.2d 1197, 1202 (Pa. Super.2010), citing **Berkeyheiser**, 936 A.2d at 1125. Moreover, "[t]he application of the attorney-client privilege and the work product doctrine are questions of law over which our standard of review is *de novo* and our scope of review is plenary." **CLL Acad., Inc. v. Acad. House Council**, 231 A.3d 884, 888 (Pa. Super. 2020) (citation omitted).

The statute governing attorney-client privilege states that: "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S.A. § 5928.

> To invoke application of the attorney-client privilege, four elements must be established:
>
> 1) The asserted holder of the privilege is or sought to become a

___

is fundamentally a breach of contract action; the privileges, themselves, are deeply rooted in public policy; and if these potentially privileged pieces of information were disclosed, there would be no effective means of review available.

client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

**Ford-Bey v. Pro. Anesthesia Servs. of N. Am., LLC**, 229 A.3d 984, 990–91 (Pa. Super. 2020) (cleaned up).

To claim attorney-client privilege, the asserting party

bears the initial burden of producing sufficient facts to show that he has properly invoked the privilege for the communications that he has declined to disclose. This often entails an affidavit, statement, or testimony clarifying the circumstances under which the communication was made. The trial court must determine whether the facts support the asserted privilege. If the trial court finds that the party invoking privilege has proffered proof to satisfy the test, the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies. Absent a sufficient showing of facts to support the privilege, the burden does not shift and the communications are not protected.

*Id*., at 991. We also note that "[a] privilege log provides an acceptable format to identify documents, the applicable privilege, and the basis upon which privilege is claimed." **Carlino E. Brandywine, L.P. v. Brandywine Vill. Assocs.,** 260 A.3d 179, 197 (Pa. Super. 2021) (footnote omitted). Although we have illuminated that attorney-client privilege can be waived by the client, we emphasize that, specifically, "[i]n-issue waiver occurs when the privilege-

- 14 -

holder asserts a claim or defense, and attempts to prove that claim or defense by reference to the otherwise privileged material." **Commonwealth v. Harris**, 32 A.3d 243, 253 (Pa. 2011) (citation omitted)

As to work-product protections, our Rules of Civil Procedure exclude discovery that discloses "the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. 4003.3.

Here, despite there being a privilege log, the court found that the Appellants necessarily waived any privilege to communications surrounding the investigation, as they testified that they relied upon the investigation of Wilson Sonini when they made the decision to fire Holland. **See** Trial Court Opinion, 4/12/22, at 5. In contrast, the Appellants indicate that "they never relied on Wilson Sonsini's investigation of the issues raised by staff to fire Holland." Appellants' Brief, at 41 (writing, further, that it was exclusively Christoff's testimony at issue, not Vissman's, and that "Christoff merely answered the questions Holland's attorney asked … with Christoff's testimony in fact refuting Holland's claimed reliance on advice of counsel[]").[9]

Upon our review, we find that the record remains unclear at this juncture

---

[9] The Appellants also distinguish between communications they had with Wilson Sonsini prior to Holland filing the current lawsuit and the communications that transpired after that event, arguably for wholly litigation purposes. However, given our disposition of this issue, which compels remand, we need not delve into potential timing issues.

whether the Appellants intend to invoke the Wilson Sonsini investigation as a defense at trial. The court, in finding that the Appellants had waived attorney-client and work-product privileges did not conduct any *in camera* review of the most recent round of ordered documents, despite "having already conducted an *in[]camera* review once in this matter[.]" Trial Court Opinion, 4/12/22, at 7. While Christoff testified in his deposition about Wilson Sonsini's advice vis-à-vis the termination of Holland's employment, the Appellants did not raise this issue in their pleadings nor did they include a defense of reliance on the advice of counsel in their answer and new matter.

Therefore, in light of this ambiguity, we conclude that a remand is appropriate. On remand, the court must ascertain whether the Appellants intend to utilize any of the "otherwise privileged material" contained in the at-issue documents in order to establish a defense at trial or otherwise rely upon them at trial.[10] If the Appellants are willing to stipulate that such documents will not ultimately come into contention or that none of counsel's advice will become an issue at trial, then pursuant to **Yocabet v. UPMC Presbyterian**, 119 A.3d 1012 (Pa. Super. 2015), the court should thereafter conduct *in camera* review of the potentially privileged material and make corresponding determinations as to whether those documents are discoverable for an

_____

[10] This determination would apply to both documents contained within the privilege log and, too, Vissman's compelled testimony addressing the advice that his lawyer provided to him.

unrelated reason. *See id.*, at 1029; *see also Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1179 (Pa. Super. 2012) ("*In camera* review of disputed claims of privilege is often necessary and appropriate.").

If the Appellants are unwilling to stipulate, then the court is obligated to ascertain the extent the Appellants have invited discovery by placing attorney-client and work-product-related documents and communications at issue in the ultimate resolution of the case. "The scope of waiver of privileged materials must be determined by the extent to which the privileged material has been placed in issue. Because privilege waivers do not waive the attorney-client privilege or work product doctrine as to all material counsel may possess, our precedent requires an issue-specific analysis of waiver." *Carlino E. Brandywine, L.P.*, 260 A.3d at 204 (citation omitted). As relevant to this case, such an issue-specific waiver analysis would require the court's consideration of, for example, whether communications between the Appellants and Wilson Sonsini predated Holland's termination and thus could have influenced that decision. Regardless of whether waiver is found, the court should conduct an *in camera* review to ensure that documents which retain their privilege or are otherwise undiscoverable are not disseminated.

The Appellants next contest whether the lower court should have ordered production of their personal net worth information. *See* Order, 12/10/21, at 2 (obligating, *inter alia*, Vissman to testify as to how he paid for a house in Florida). Holland apparently seeks such information to pursue a

punitive damages claim at trial.

The plain text of the order requires the Appellants to produce "personal net worth" and "financial capacity" documents. Cases have found satisfaction of the collateral order doctrine when addressing discovery requests for individuals' "tax returns, bank records[,] and net worth documents[.]" ***See, e.g.***, ***Cabot Oil and Gas Corporation v. Speer*** (***Cabot Oil***), 241 A.3d 1191, 1196 (Pa. Super. 2020) (internal footnote omitted). In finding the three prongs to be met, ***Cabot Oil*** held that: (1) it was possible to address the discoverability of these types of records without delving into, as it related to that case, the underlying Dragonetti Act violation claim; (2) people have a significant privacy interest in their tax returns; and (3) irreparable harm would follow if review was postponed, given the aforesaid privacy interests at stake. ***Id***., at 1197-98.

We see no basis to conclude differently in the present matter. There is clear separability between the causes of action asserted in Holland's complaint and the privacy concerns raised on appeal; the Appellants have a deeply-rooted interest in maintaining the confidentiality of their personal financial information; and if such information were to be obtained through discovery, the Appellants would be without clear recourse if that information became publicly available. Therefore, the Appellants' appeal as to this element of the trial court's discovery order satisfies the collateral order doctrine.

Under Rule 4003.7, "[a] party may obtain information concerning the wealth of a defendant in a claim for punitive damages only upon order of court setting forth appropriate restrictions as to the time of the discovery, the scope of the discovery, and the dissemination of the material discovered." Pa.R.C.P. 4003.7.

Distilled down, the Appellants claim that because this case is principally a breach of contract action, punitive damages are not available as a matter of law. **See** Appellants' Brief, at 46. The Appellants also assert that even if Holland were ultimately successful at trial and punitive damages were conceptually available, none of their own conduct would warrant punitive damages. Finally, the Appellants believe that the court erred by "failing to include any restrictions as to the timing, scope, or dissemination of net worth information." **Id**.

Our caselaw makes clear that Holland's breach of contract and unfair trade practices claims do not allow for the recovery of punitive damages. **See Richards v. Ameriprise Fin., Inc.**, 152 A.3d 1027, 1035 (Pa. Super. 2016), citing **McCauslin v. Reliance Fin. Co.**, 751 A.2d 683, 685 (Pa. Super. 2000) (stating that claims under the UTPCPL do "not 'confer a right to [impose] punitive damages'"); **DiGregorio v. Keystone Health Plan East**, 840 A.2d 361, 370 (Pa. Super. 2003) (*en banc*) (providing that a litigant cannot "recover punitive damages for an action solely sounding in breach of contract"). However, our courts have permitted recovery of punitive damages

in cases involving breach of fiduciary duty claims. *See, e.g.*, *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 773 (Pa. 2005) ("[A]n award of punitive damages [is] proper for claims sounding in breach of fiduciary duty[.]"); *B.G. Balmer & Co., Inc. v. Frank Crystal & Company, Inc.*, 148 A.3d 454, 464-65 (Pa. Super. 2016) (finding punitive damages appropriate where the underlying claim was breach of fiduciary duty*)*; *Viener v. Jacobs*, 834 A.2d 546, 561 (Pa. Super. 2003) (same).

Nevertheless, the trial court has not ruled, specifically, as to the appropriateness or basis for permitting punitive damages, nor has the court indicated whether the breach of fiduciary duty claim could support a punitive damages award. While the Appellants state that Holland's breach of fiduciary duty claim is derivative of his breach of contract claims, it would be premature to speculate whether the fiduciary duty issue will ultimately allow for Holland to seek punitive damages.

On remand, the court must unequivocally determine whether allowing for punitive damage-related discovery is appropriate. First, as a preliminary consideration, the court must ascertain if Holland's breach of fiduciary duty claim, if successful at trial, could warrant punitive damages against any of the named Appellants. If it answers that inquiry, to any degree, in the affirmative, then, secondly, the court must impose restrictions on discovery pursuant to Rule 4003.7. As it stands now, the Appellants are obligated to "produce information about their personal net worth and financial capacity" without any

sort of limitation whatsoever. However, the court, if it is to allow for such discovery, must put forth "appropriate restrictions" as to the time, scope, and dissemination of that information. Pa.R.C.P. 4003.7.

In the Appellants' third question, they ask whether the court erred in compelling them to produce confidential financial records of non-party-owned entities. Juxtaposed against the discovery order, the Appellants challenge its first two components wherein they are required to: (1) provide complete responses to Holland's amended requests for production of documents and interrogatories from July 15, 2021[11]; and (2) provide financial information for new clinics, including Baylife, in accordance with a preexisting July 28, 2020 order. *See* Order, 12/10/21, at 1. In summary, the Appellants contend that because they "have already produced all the financial information of every physical therapy clinic owned by … PTI … [the discovery order's effect] is to compel … Vissman and Christoff to produce (1) financial information regarding personal investments and (2) financial information belonging to a non-party entity owning physical therapy clinics that are not owned by … PTI." Appellants' Response in Opposition to [Holland's] Motion To Quash Appeal, at 16-17.

_____

[11] These requests require Vissman and Christoff to, *inter alia*, provide balance sheets, income statements, organizational documents, locational information, clinic names, and the ownership structures of any clinic opened since January 1, 2015, in which they have any sort of financial or ownership interest. *See* Appellants' Response in Opposition to [Holland's] Motion To Quash Appeal, at 16 n. 3 (citation omitted).

- 21 -

It is not entirely clear from the record what documents Vissman and Christoff possess as it pertains to both their own personal investments and the records of any non-party entity, namely Baylife. To the extent the Appellants are asserting the privacy rights of a non-party to the present action, we emphasize that there is no indication Baylife, or any other analogous entity, has moved to intervene in this case. As such, the Appellants "cannot act as their litigation proxies," *Cabot Oil*, 241 A.3d at 1196, and are therefore foreclosed from overcoming the collateral order doctrine as to any obligation imposed on a non-party. *Cf. Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866, 871 (Pa. Super. 2002) (establishing that business documents labeled "proprietary" and "confidential," when considered in light of the facts of that case, satisfied the collateral order doctrine, allowing for review of the denial of a confidentiality order sought by the originator of those documents).

As to those documents possessed by Vissman and Christoff that show their personal investments in new clinics, those financial documents appear conceptually akin to bank records, which, as stated earlier, have been held to satisfy all three prongs of the collateral order doctrine.[12] *See Cabot Oil*, 241 A.3d at 1197-98 (finding that bank records are separable if capable of independent analysis, privacy interests are inherent to those types of records,

---

[12] We note that there is a dearth of case law as it pertains to investment-related information within the context of the collateral order doctrine.

and that if review was postponed, any adjudication would be moot, given the pre-existing disclosure). Accordingly, to the extent the Appellants possess documents related to their personal investments that they are required to now disclose pursuant to the appealed-from order, they have met the collateral order doctrine's tripartite test.

In summarizing the Appellants' argument, they contend that discovery as to their investments in non-PTI clinics is not relevant and hence should not have been allowed. Based on the language contained in the employment agreement, Holland has no entitlement to any non-PTI investment. **See** Appellants' Brief, at 66. In effect, "the discovery of Baylife's confidential financial records [is] irrelevant and therefore improper." **Id**., at 66-67.

The court, however, found that the Appellants are attempting "to hide behind straw man arguments of corporate structure by claiming PTI does not own Baylife[.]" Trial Court Opinion, 4/12/22, at 9. The court continued: "[t]his record is replete with examples put forth by [Holland] showing there is marginal (if not significant) interplay between PTI and its members and these new clinics. As minority owners[, the Appellants must] turn over the material within their possession and control." **Id.**

Pursuant to Rule 4003.1, generally speaking, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Pa.R.C.P. 4003.1(a). The lower court found that such information, regarding investments in non-PTI clinics, was

relevant to at least one of Holland's causes of action, given the significant interplay between Baylife and the individual Appellants, which was uncovered during the course of this litigation. While the Appellants aver that discovery in this domain is irrelevant to Holland's claims, they have not demonstrated to this Court that the trial court erred or abused its discretion by permitting discovery into the nexus between the Appellants and Baylife. Therefore, in the absence of any reason to limit discovery, we affirm the trial court's order directing the production of documents regarding the Appellants' non-PTI investments, specifically in contemplation of the Baylife-related information.

The Appellants' fourth issue maintains that the trial court abused its discretion in compelling financial records that Holland never requested during discovery. This contested part of the order requires the Appellants to "provide all documents exchanged with Wilson Sonsini regarding investment/ownership in clinics[.]" Order, 12/10/21, at 1.

To demonstrate satisfaction of the collateral order doctrine, the Appellants simply assert that "an appeal of this ruling plainly satisfies Rule 313's three-pronged test for appealing a collateral order" and that they "have privacy interests in their communications with their lawyers and their personal financial information." Appellants' Response in Opposition to [Holland's] Motion To Quash Appeal, at 20-21. While the documents that the trial court ordered to be produced appear to target Wilson Sonsini's investment and ownership interests in clinics, the relevant portion of the order was broadly

phrased, and it appears that it could also potentially sweep in legal advice provided by Wilson Sonsini or Vissman and Christoff's personal financial information. Therefore, for the reasons set forth above, we conclude that the third bullet-point of the order requiring that the Appellants "provide all documents exchanged with Wilson Sonsini regarding investment/ownership in clinics" satisfies the collateral order doctrine. Order, 12/10/21, at 1.

On the merits, the Appellants argue, first, that the documents were never requested by Holland and that the court could not compel discovery as to which the Appellants did not have the opportunity to object and, second, that the documents were irrelevant to Holland's claims as Wilson Sonsini does not have an ownership interest in PTI, Holland's former employer.

As explained above, however, the trial court rejected the Appellants' efforts to curb Holland's inquiry into the individual Appellants' ownership of non-PTI clinics, and the Appellants have not demonstrated grounds for this Court to overturn the lower court's determination that such topics are the proper subject of discovery. Nevertheless, we acknowledge that the discovery order for documents concerning Wilson Sonsini's investments in non-PTI clinics may relate to the discovery ordered concerning the firm's recommendation that Holland be fired; as we have remanded on the latter issue, remand also is necessary to allow the trial court to reassess the discovery that should be authorized concerning Wilson Sonsini's investments. Moreover, we agree with the Appellants that they should have the opportunity

to object to a discovery request prior to being compelled by court order to do so.

Accordingly, we remand for the trial court to determine the continued relevance of Wilson Sonsini's investments in clinics co-owned with the Appellants, permit the Appellants to raise objections to such discovery based upon questions of attorney-client privilege, conduct an *in camera* review of documents that are claimed to be privileged prior to production, and assess whether any requested documents would touch upon the individual Appellants' personal financial information.

In summary, we quash this appeal in part. We affirm the trial court's December 10, 2021 order in part, and we remand, consistent with the dictates of this memorandum, for the court to more thoroughly explore the attorney-client privilege and work-product doctrine issues identified herein and to more fully refine the scope of punitive damages discovery, should the court deem that such discovery is necessary.

Appeal quashed in part. Order affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/17/2023